IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF WASHINGTON, D.C.

COLORADO WILD HORSE AND )
BURRO COALITION, INC., ET AL., )
                               )
    Plaintiffs,                )   Civ. No. 06-1609 (RMC)
                               )
    v.                         )
                               )
KEMPTHORNE, et al.,            )
                               )
    Defendants.                )
_____)

DECLARATION OF DONALD L. GLENN

I, Donald L. Glenn, declare as follows:

1.  I am the Division Chief for the United States Department of the Interior's Bureau of Land Management (BLM or the Bureau), National Wild Horse and Burro Program, located in Washington, D.C. I have served in this capacity since May, 2006. I have been employed by BLM since 1976.

2.  As Division Chief, my principal duties involve supervision and management of the National Wild Horse and Burro Program, including: strategic and tactical planning; overall budget development and execution; development of national policies and procedures; and coordination with outside interests, Congress, and the public.

3. This declaration is provided in response to statements made by counsel for Plaintiffs at the hearing held on Friday, September 29, 2006, in front of this Court on the motion for temporary restraining order seeking to halt BLM's planned gather and removal projects on the Piceance East Douglas Herd Management Area ("East Douglas HMA") and the West Douglas Herd Area ("West Douglas HA"). Specifically, this declaration is offered in response to allegations made by Plaintiffs' counsel I understood to mean that BLM's Restoration of Threatened Watersheds Initiative ("Restoration Initiative"), implemented in 2000, and described more fully below, was derived pursuant to, or as part of, a "deal" or other "arrangement" with the National Cattlemens Beef Association.

4. For purposes of brief background, the mission of the National Wild Horse and Burro Program ("Wild Horse and Burro Program") is to manage wild horses and burros on the public rangelands consistent with the BLM's multiple use mandate. This mandate takes into consideration natural resources such as wildlife and vegetation and other uses such as livestock grazing and recreation. The primary responsibilities of the BLM Wild Horse and Burro Program are to preserve and protect wild horses and burros and to manage for healthy rangelands.

5. The BLM is mandated by law to manage the natural resources on the public lands under principles of multiple use and sustained yield. Wild horses and burros are natural resources requiring management on the public lands. Specifically, the Secretary must manage wild free roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance with other resources managed on the public lands. The BLM (as the Secretary's delegate) carries out this function in herd areas ("HA") and "herd management areas" ("HMAs"). "Herd Area is defined as an area identified as having been used by a herd as its habitat in 1971. HMAs are established in accordance with land use plans. Responsibility for a particular HA and/or HMA rests with the Bureau's local field and state offices.

6. In each herd management area, the Bureau determines an appropriate management level ("AML") for the wild horse and burro populations. An appropriate management level is the number of adult wild horses or burros determined through BLM's planning process to be consistent with the objective of achieving and maintaining a thriving natural ecological balance and multiple-use relationship in a particular herd management area. Local Bureau offices are responsible for determining AML for the herds they manage.

7. When the Bureau determines that overpopulation exists on a given area of the public lands and that action is necessary to remove excess animals, BLM must immediately remove excess animals from the range so as to achieve appropriate management levels.

8. In early 1999, the Bureau recognized that a population explosion among wild horses and burros had rendered it incapable of achieving its statutory goals at then-current funding levels. The nationwide wild horse and burro population was at least 46,000 animals or approximately 19,500 animals above AML on a nationwide basis. In response, the Bureau developed a strategy to achieve AML nationwide and justify increased funding for the program. After soliciting advice from state Bureau offices about their specific needs and reviewing several options, the national office settled on a plan that would, if implemented, achieve AML nationwide in five years at a cost of an additional $9 million per fiscal year from 2001 through 2005.

9. This plan was presented to Congress in February 2000 as a Presidential Budget Initiative entitled "The 'Restoration of Threatened Watersheds Initiative" and subtitled "Living Legends in Balance with the Land: A Strategy to Achieve Healthy Rangelands and Viable Herds," the five-page document informed Congress that "[o]ne of the major threats to watershed health is an overabundance of wild horses and burros on rangelands" and that

"at current funding capability and adoption demand" the populations of these animals "will increase at a rate faster than our ability to remove excess animals." The Bureau explained that the additional appropriation would enable the field offices to meet removal targets based on an initial four-year gather schedule. This would result in a large number of removals in the early years of implementation and a gradual decline to maintenance levels. The plan also contemplated eliminating age restrictions on removals, enhanced marketing of animals and adoption events, and an expanded program of training and gelding for difficult-to-adopt animals.

10. Congress approved the needed funding for the program and the various field offices began implementing individual gathers on a herd-by-herd basis.

11. The Restoration Initiative was implemented principally to bring the national watershed conditions back to a state of health by managing wild horse and burro herds in thriving natural ecological balance with all natural resources on public lands.

12. There is absolutely no validity to Plaintiffs' assertion that BLM's Restoration Initiative was derived from any "deal," actual or *de facto*, made with the National Cattlemens Beef Association to eliminate or reduce wild horse and burro populations in favor of livestock interests.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge.

Executed in Washington, D.C., on this 3rd day of October, 2006.

*[signature]*
Donald L. Glenn
Division Chief: Wild Horse and Burro Program
U.S. Department of the Interior
Bureau of Land Management