UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
COLORADO WILD HORSE AND BURRO           )
COALITION, INC., et al.,                )
                                        )
                                        )
                  Plaintiffs,           )
                                        )
        v.                              )      No. 06-1609 RMC
                                        )      Judge Rosemary M. Collyer
DIRK KEMPTHORNE, et al.,                )
                                        )
                                        )
                  Defendants.           )
_____)


**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Land Use Planning Decisions Involving Wild Horses in the White River
         Resource Area: 1975-Present . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    The 2006 East and West Douglas Gathers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    BLM's Proposed Amendment to the RMP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.    Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Plaintiffs' Challenges to the Legality of the East and West Douglas Gathers, the
         1981 HMAP, and the "Instruction Memorandum" are Moot . . . . . . . . . . . . . . . 9

    B.    Plaintiffs' Remaining Claims Are Either Time Barred, or Not Authorized
         Under the APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         1.    Any potential claim against either the 1981 HMAP or the 1997
              RMP is "time-barred" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         2.    The specific resource management planning goals challenged by
              Plaintiffs do not qualify as reviewable "final agency actions" . . . . . . . 14

         3.    BLM's proposed Amendment to the RMP is not a "final agency
              action" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Bennett v. Spear,
     520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Bracco Diagnostics, Inc. v. Shalala,
     1997 WL 614485 (D.D.C. 1997) (unpublished opinion) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Branch v. Tunnell,
     14 F.3d 449 (9th Cir. 1994),  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Brotherhood of Maintenance of Way Employees, et al. v. Atchison Topeka and Santa Fe
Railway, Co.,
     1996 U.S. Dist. LEXIS 5105 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chambers v. Time Warner, Inc.,
     282 F.3d 147 (2nd Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Clarke v. United States,
     915 F.2d 699 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Defunis v. Odegaard,
     416 U.S. 312 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

EEOC v. St. Francis Xavier Parochial Sch.,
     117 F.3d 621 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Friends of the Earth, Inc. v. Bergland,
     (remanded) 576 F.2d 1377 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fund for Animals, Inc. v. BLM,

460 F. Cir. 13 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11, 14-16

Galbraith v. County of Santa Clara,
307 F. 3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Grand Lodge of Fraternal Order of Police v. Ashcroft
185 F. Supp. 2d 9 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gulf Oil Co. v. Brock,
778 F.2d 834 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Haase v. Sessions,
835 F.2d 902 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Herbert v. Nat'l Academy of Sciences,
974 F.2d 192 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Indep. Equip. Dealers Ass'n v. EPA,
362 U.S. App. D.C. 53, 372 F.3d 420 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 14

Kaempe v. Myers,
367 F.3d 958 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lujan v. National Wildlife Federation,
497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

Ohio Forestry Association, Inc. v. Sierra Club,
523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Olaniyi v. District of Columbia,
416 F. Supp. 2d 43 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pitney Bowes, Inc. v. United States Postal Serv.,
27 F. Supp. 2d 15 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sierra Club v. Penfold,
        857 F.2d 1307 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Trafalgar Capital Assocs., Inc. v. Cuomo,
        159 F.3d 21 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Ritchie,
        342 F.3d 903 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Warren v. Fox Family Worldwide, Inc.,
        328 F.3d 1136 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Wind River Mining Corp v. United States,
        946 F.2d 710 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL STATUTES**

5 U.S.C. § 551(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. §702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. §704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. § 1332(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. § 1332(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16 U.S.C. §1333(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6

16 U.S.C. § 1333(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16 U.S.C. § 1333(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 4321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

43 U.S.C. §1732(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

**FEDERAL REGULATIONS**

43 C.F.R. § 4710.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 C.F.R. § 4710.3-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 C.F.R. § 4710.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

43 C.F.R. § 4730.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## <u>INTRODUCTION</u>

Plaintiffs' amended complaint seeks declaratory judgment regarding the legality of the

Bureau of Land Management's ("BLM") gather and removal of wild horses in the Piceance-East Douglas Herd Management Area ("Piceance-East Douglas HMA"), and the West Douglas Herd Area ("West Douglas HA"), a capture operation that occurred in September and October, 2006 respectively. Plaintiffs also seek a declaratory judgment on the legality of a BLM "Instruction Memorandum," which the Federal Defendants discern to be Instruction Memorandum #2002-95, the 1981 Herd Management Area Plan ("1981 HMAP"), and the 1997 Resource Management Plan ("1997 RMP"). Finally, Plaintiffs seek a declaratory judgment on the legality of a proposed decision, which is currently pending BLM review, to remove all remaining wild horse herds from the West Douglas HA.

The Federal Defendants, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), hereby move to dismiss the first amended complaint because: (1) the Plaintiffs' claims related to the gather/removals conducted in the Piceance-East Douglas HMA and the West Douglas HA are moot; (2) Plaintiffs' claims related to the "Instruction Memorandum," 1981 HMAP, and 1997 RMP, are time-barred under 28 U.S.C. § 2401 and fail to qualify as reviewable "final agency actions" under the Administrative Procedure Act ("APA"); and (3) Plaintiffs have no cognizable claim under the APA as to the *proposed* decision to remove all horses from the West Douglas Herd Area. The reasons and authority supporting this motion are set forth more fully below.

## FACTUAL BACKGROUND

### A.     Statutory and Regulatory Background

The BLM "manages the public lands under principles of multiple use and sustained yield." 43 U.S.C. §1732(a). Since 1971, this responsibility has included oversight and management of wild horses and burros on public lands. See Wild Free Roaming Horses and Burros Act, 16 U.S.C. § 1331 et seq. ("Wild Horses and Burro Act"). When it enacted the Wild Horses and Burro Act, Congress was concerned that wild horses were vanishing from the West. Congress wished to preserve the horses as "living symbols of the historic and pioneer spirit of the West," and directed the Secretary to provide for their protection and management. 16 U.S.C. §§ 1331. The Wild Horses and Burro Act grants the Secretary of the Interior jurisdiction over all wild free-roaming horses and burros on federal lands and directs the Secretary to "manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance on the public lands." 16 U.S.C. §1333(a); see also Fund for Animals, Inc. v. BLM, 460 F.3d 13, 15 (D.C. Cir. 2006). "The Bureau (as the Secretary's delegate) carries out this function in 'localized herd management areas'" ("HMAs"), Fund for Animals, 460 F.3d at 15; see also 16 U.S.C. § 1332(c); 43 C.F.R. § 4710.3-1, established in accordance with broader land use plans. Fund for Animals, 460 F.3d at 15; see also 43 C.F.R. § 4710.1. "Responsibility for a particular herd management area rests with the [BLM's] local field and state offices." Fund for Animals, 460 F.3d at 15.

In each herd management area, BLM officials at the field and state office levels are afforded significant discretion to determine their own methods for computing "appropriate management levels" ("AML") for the wild horse and burro populations they manage. Id.; see also, 16 U.S.C. § 1333(b)(1). When wild horse populations exceed the carrying capacity of the range, or when they stray outside of a designated herd area, BLM is obliged under the Wild

2

Horses and Burro Act to remove them.  <u>See</u> 16 U.S.C. § 1333(b)(2); 43 C.F.R. § 4710.4.

**B.      Land Use Planning Decisions Involving Wild Horses in the White River Resource Area: 1975-Present.**

In 1975 the BLM State Director approved the first land use plan for the White River Resource Area ("WRRA").  <u>See</u> Declaration of Kent Walter at ¶ 11, Exh. A attached.  This Plan, officially referred to as the 1975 WRRA Management Framework Plan ("1975 MFP") marked the <u>first</u> time that BLM decided that the area west of Douglas Creek, (commonly referred to during this litigation as the "West Douglas Herd Area"), was <u>not</u> habitat suitable for management of wild horse herds.  <u>See</u> id. at ¶ 11.  Consequently, it was the 1975 MFP that first called for the eventual removal of all horses west of Douglas Creek.  <u>See</u> id.  In 1981 BLM published a proposed draft updated MFP. ("1981 MFP")  <u>See</u> id.  Several management scenarios for wild horses (including the 1975 scenario to remove all wild horses west of Douglas Creek) were presented to the public for consideration in the proposed MFP.   <u>See</u> id.   The State Director approved and began implementation of the MFP in April 1981.[1]  <u>See</u> id.

With the adoption of the 1981 MFP, BLM decided to manage a herd of between 95 and 140 wild horses within a 148,153 acre area (the Piceance-East Douglas HMA).[2]  <u>See</u> Exh A. at ¶ 11.  BLM allocated 2,101 Animal Unit Months (AUMs) of forage to support the horses on the Piceance-East Douglas HMA.  <u>See</u> id.  The updated MFP also reiterated the 1975 decision calling for the eventual removal of wild horses from 295,826 acres, including all horses west of

---

[1]      The Plaintiffs do not raise any substantive challenge to the 1975 or 1981 MFPs in their First Amended Complaint.

[2]      The Piceance-East Douglas HMA is a geographic subset of the 1,445,900 acres of BLM surface estate comprising the WRRA.  <u>See</u> Exh. A at ¶ 1.

Douglas Creek. Id. In connection with the 1981 MFP, the White River Field Office ("WRFO") completed a Herd Management Area Plan (HMAP) for the Piceance-East Douglas HMA. See id. at ¶ 12. The HMAP, required pursuant to 43 C.F.R. § 4730.6, (now required by 43 C.F.R.§ 4710.3-1), was an activity plan identifying "the policies and guidelines under which wild horses in the White River Resources Area would be managed . . .." (See 1981 HMAP, Exh. B attached, at p. 3). While the HMAP immediately implemented some of the land use planning decisions made in the 1981 MFP such as establishing the size and geographic scope of the Piceance-East Douglas HMA, where BLM decided it was most appropriate to manage wild horse herds, it also served to guide BLM's *eventual* implementation of other land use planning decisions, (reduction of population of wild horses on the Piceance-East Douglas HMA to between 90-140 horses (*sic.*) by 1985, and the eventual removal of all horses west of Douglas Creek). See id. at pp. 5, 13-15. In support of the notion that the HMAP did not immediately implement all land use planning decisions made in the 1981 MFP, the HMAP provided that "all projects and gathering operations will be subject to constraints within the MFP and will undergo a site-specific environmental assessment prior to any on the ground work." Id. at p. 16.

In 1997, BLM further updated its Land Use Plan via the "White River Record of Decision and Approved Resource Management Plan for the White River Resource Area," commonly referred to during the course of this litigation as the "1997 RMP." (See 1997 RMP, Exh. C attached).[3] The 1997 RMP superceded the 1981 MFP as the definitive land use planning document for the WRRA. See Exh. A at ¶ 13. The 1997 RMP called for the management of

---

[3]     As the RMP is a voluminous document, the Federal Defendants only attach the pages relevant to management of wild horses.

wild horses within the Piceance-East Douglas HMA "to provide a heathy, viable breeding population with a diverse age structure." See Exh. C at p. 2-26. BLM would manage the West Douglas Herd Area "in the short-term (0-10 years) to provide forage for a herd of 0-50 horses" and its long term objective (+10 years) was to "remove all wild horses from these areas." Id. The 1997 RMP also expanded the previous boundary of the Piceance-East Douglas HMA by adding the Greasewood allotment for a total acreage area of 190,130. See id. The 1997 RMP called for management of a wild horse herd of 95-140 animals in the Piceance-East Douglas HMA so that a thriving ecological balance is maintained for all plant and animal species on that range." Id.

### C.    The 2006 East and West Douglas Gathers

In furtherance of its obligation to manage wild horse herd populations to maintain a thriving, natural ecological balance with other uses on public lands pursuant to 16 U.S.C. §§ 1332(f), 1333(a), and 43 C.F.R. §4710.4, in June 2006, BLM proposed to gather 436 head of wild horses from within the Piceance-East Douglas HMA, and 50-100 head determined to have wandered off the Piceance-East Douglas HMA ("East Douglas Gather"). BLM also proposed to gather some 89 horses from the West Douglas HA. ("West Douglas Gather"). These proposed gathers sought to bring population numbers to the low end of the AML of 135 horses in the Piceance-East Douglas HMA and to 50 in the West Douglas HA. See Exh. A at ¶ 14. BLM issued its Notice of Final Decision as to the West Douglas Gather on July 27, 2006. See West Douglas Notice of Final Decision, Exh. D attached. BLM issued a Notice of Final Decision as to the East Douglas Gather three days later, on August 1. See East Douglas Notice of Final Decision, Exh. E attached.

On September 17, 2006, BLM implemented the East Douglas Gather, which was completed on September 29, 2006. <u>See</u> Exh. at ¶ 15. BLM gathered 322 of the 436 it had planned to gather from within the East Douglas HMA and 60 horses from outside the HMA. Id. Of this total, 280 horses were removed with the remainder released back into the HMA. Id. In connection with the Gather, BLM also administered an immunocontraceptive fertility control vaccine known as Porcine Zona Pellucida ("PZP") to 28 wild mares gathered from and eventually released back to the Piceance-East Douglas HMA. Id. On October 15, 2006, BLM completed its gather and removal of wild horses from the West Douglas HA. <u>See</u> Exh. A at ¶ 16. A total of 38 horses were removed from the HA. Id.

After encountering problems with the government-hired contractor, delays caused by inclement weather, the extremely difficult terrain (in West Douglas HA), budgetary concerns complicating the gather operations, and other impediments, BLM determined that all actions contemplated in the East and West Douglas Notices of Final Decision were complete as of October 15, 2006. Id. at ¶ 17. Any further gather and removal operations would be subject to a new Notice of Final Decision. Id.

### D.       BLM's Proposed Amendment to the RMP

The West Douglas HA encompasses approximately 123,387 acres of public lands administered by BLM's WRFO. <u>See</u> Exh. A at ¶ 11. In April 2005, BLM published a 68- page environmental assessment analyzing the environmental impacts of two proposed alternatives for amendment of the 1997 RMP as it applies to management of wild horses in the West Douglas

HA.[4]  See Plfs' First Am. Compl. at ¶ 23.  One alternative called for implementing the

management decisions contained in WRRA planning documents since 1975 (removal of all wild

horses from the West Douglas HA).  Id.  The other alternative called for amending the RMP to

manage a small herd of 29-60 wild horses in the West Douglas HA.  Id.  Several months later,

BLM published a proposed decision to manage 0-50 horses in the short term, and remove wild

horses from the West Douglas HA by 2007.  Id.  Several horse advocacy organizations protested

the proposed decision, including at least some of the Plaintiffs in this action.  See Plfs' First Am.

Compl. at ¶ 22.  BLM has not yet completed its response to the protests and has made no final

decision as to whether it will remove all wild horses from the West Douglas HA or whether it

will maintain a small herd of 29-60 horses. See Plfs' First Am. Compl. at ¶ 24.

      **E.     Procedural Background**

      On September 17, 2006, Plaintiffs filed their complaint seeking declaratory and

injunctive relief.  On September 22, 2006, Plaintiffs filed a motion seeking emergency injunctive

relief which was denied on October 5, 2006.  The Court directed the parties to provide a

proposed schedule to govern further proceedings.  On December 6, 2006, Plaintiffs filed an

amended complaint, adding two new claims that challenge BLM's purported reliance on the

"Instruction Memorandum" (Count 4 of the Amended Complaint) and the 1981 HMAP (Count 5

of the Amended Complaint) seeking declaratory and injunctive relief.

**<u>STANDARD OF REVIEW</u>**

---

[4]       This document is not attached to the Defendants' opposition because it is pre-decisional
in nature and thus not relevant for review by this Court at this time.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). Review of motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) require the Court to accept as true all the factual allegations contained in the complaint. See, Olaniyi v. District of Columbia, 416 F. Supp. 2d 43, 50 (D.D.C. 2006). However, even when considering a motion to dismiss pursuant to Rule 12(b)(6), the court may take notice of any document referenced in a plaintiff's complaint. See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004). When deciding a motion brought pursuant to Rule 12(b)(1), a court is not limited to the allegations and documents referenced in the complaint. It may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d at 9, 14. (D.D.C. 2001) Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1141 n. 5 (9th Cir. 2003). A court may consider evidence on which the complaint necessarily relies if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds* by Galbraith v. County of Santa Clara, 307 F. 3d 1119 (9th Cir. 2002); see also Warren, 328 F.3d at 1141 n.5, Chambers v. Time

Warner, Inc., 282 F.3d 147, 153 n.3 (2nd Cir. 2002).  The Court may treat such a document as

"part of the complaint, and thus may assume that its contents are true for purposes of a motion to

dismiss under Rule 12(b)(6)."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  A

motion to dismiss on grounds of mootness is properly brought under Rule 12(b)(1).  See, e.g.,

Bracco Diagnostics, Inc. v. Shalala, 1997 WL 614485, at *1 (D.D.C. 1997) (unpublished

opinion).

## **ARGUMENT**

**A.**     **Plaintiffs' Challenges to the Legality of the East and West Douglas Gathers,
          the 1981 HMAP, and the "Instruction Memorandum" are Moot.**

Counts One and Two of Plaintiffs' first amended complaint seek a declaratory judgment

that BLM's East and West Douglas Gathers violated both the National Environmental Policy Act

(42 U.S.C. § 4321 *et seq.*) ("NEPA") and the Wild Horses and Burro Act.  See Plfs' First Am.

Compl. at pp. 29-31, 34.  Because the Gathers have already occurred, this Court lacks

jurisdiction to review Plaintiffs' challenges of them.  In Count Four, Plaintiffs challenge the

decisions referenced in the 1981 HMAP.  See Plfs' First Am. Compl. at pp. 32-33, ¶¶ 92-93.

Plaintiffs' challenge to the 1981 HMAP is moot because it was superceded by the 1997 RMP.

Finally, in Count Five, Plaintiffs challenge a so-called BLM "Instruction Memorandum."  See

Plfs' First Am. Compl. at pp. 33-34, ¶¶ 95-97.  Any claim related to this Instruction

Memorandum is moot because, by its own terms, it expired on September 30, 2003.

The judicial power of the United States extends to enumerated "Cases" and

"Controversies" listed in Article III of the Constitution.  U.S. Const. Art. III, § 2; Brotherhood of

Maintenance of Way Employees, et al. v. Atchison Topeka and Santa Fe Railway Co., 1996 U.S.

Dist. LEXIS 5105, at *3 (D.D.C. 1996).  Where a case lacks a "case or controversy" (i.e., is

moot) it must be dismissed, regardless of its stage in the litigation.  See, e.g., Defunis v. Odegaard, 416 U.S. 312, 319 (1974); Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990).  There remains no justiciable controversy for this Court to consider because the gathers themselves are complete.  As such, any relief this Court might issue would be merely advisory in nature.  See  Gulf Oil Co. v. Brock, 778 F.2d 834, 838 (D.C. Cir. 1985) (the "case or controversy" requirement is understood to prohibit federal courts from issuing advisory opinions based upon hypothetical factual situations).  Where the activities a plaintiff seeks to have enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot.  See Sierra Club v. Penfold, 857 F.2d 1307, 1318 (9th Cir. 1988); see also Friends of the Earth, Inc. v. Bergland, (remanded) 576 F.2d 1377, 1379 (9th Cir. 1978).  The D.C. Circuit has expressly found that challenges of completed horse gathers, such as those at issue here, are moot and unreviewable.  Fund for Animals, 460 F.3d at 22.

The Plaintiffs' challenge to the 1981 HMAP is moot because it was superceded by the 1997 RMP.  The 1997 RMP changed the physical size of the HMA and dictated that the Piceance-East Douglas HMAP will be ["revised] and [updated.]"[5]  This Court cannot grant Plaintiffs declaratory relief, which would be merely advisory in nature, as to decisions contained in an HMAP that is no longer factually accurate or legally operative.  See  Gulf Oil Co. v. Brock, 778 F.2d 834, 838 (D.C. Cir. 1985).

---

[5]      Plaintiffs' first amended complaint challenges the decision contained in the 1981 HMAP to manage wild horses on 148,153 acres.  See Plfs' First Am. Compl. at ¶¶ 4, 20, 29, 30, 85-93. The current size of the Piceance-East Douglas HMA (as created by the 1997 RMP) is 190,130 acres.  See Exh. C at p. 2-26.

Finally, Plaintiffs' vague challenge to the so-called Instruction Memorandum (See Plfs' First Am. Compl. at p. 17, ¶ 30) must be dismissed as moot. The Instruction Memorandum, (Exh. F attached), issued in February 2002 by an assistant director at BLM was meant to "communicate guidance and policy" to field offices regarding "how BLM would achieve AML in herd management areas by 2005." Fund for Animals, 460 F.3d at 17. The memorandum included a chart containing an estimate for the number of horses to be removed on a state by state basis; it also provided guidance as to a national policy for the age-selective removal of horses from rangelands. See id. The Memorandum also "outlined the data field offices must collect on each herd in order to prepare 'Population Management Plans,' which 'will detail the population objectives for the herd(s) and the rationale for those objectives. Id. The Instruction Memorandum stated that "it will expire on September 30, 2003." Id.; see also Exh. F at p. 1. The Court of Appeals for this Circuit, in a case with remarkable similarity to the case at hand expressly declared this very same Instruction Memorandum to be moot. See Fund for Animals, 460 F.3d at 18 ("Because the memo has expired, this claim is moot.") Id. As such, Plaintiffs' claims related to the Instruction Memorandum must be dismissed.

   **B.    Plaintiffs' Remaining Claims Are Either Time-Barred, or Not Authorized
          Under the APA.**

The remainder of Plaintiffs' first amended complaint seeks declaratory judgment on the legality of various agency planning documents, namely, the 1981 HMAP, the 1997 RMP, and the proposed amendment to the RMP. Plaintiffs principally take issue with BLM's land use and resource management planning decisions pertaining to wild horses reflected in both the 1981 HMAP and the 1997 RMP, as well as what Plaintiffs *believe* will be BLM's final decision with respect to the proposed amendment to the RMP.

As to the HMAP, as far as the Federal Defendants are able to discern, the Plaintiffs take issue with 1) BLM's decision to manage 95-140 wild horses on 148,153 acres as opposed to 443,979 acres of public lands; and 2) BLM's alleged failure to "revise and update the information in its 1981 [HMAP]." See Plfs' first amended complaint at ¶¶ 4, 20, 86, 87, 92. The Plaintiffs make similar challenges to the 1997 RMP. See Plfs' First Am. Compl. at ¶ 83, 89. As to the proposed RMP amendment, the Plaintiffs ask this Court to issue an order prohibiting BLM from "zeroing out" wild horse herds presently occupying the Piceance-East Douglas HMA and the West Douglas HA. See Plfs' First Am. Compl. at p. 36. Plaintiffs' claims fail because they are time-barred from asserting any challenge to the HMAP or the RMP. Moreover, Plaintiffs' challenge to BLM's plans to reduce the horse population in the Piceance-East Douglas HMA by 1985 (see Exh. B at p. 13), and to *eventually* remove all wild horses from the areas West of Douglas Creek (see Exh. B at p. 5) are not reviewable as "final agency actions" within the meaning of the APA. Finally, the APA does not provide jurisdiction for review of a *proposed* agency action, i.e. the pending amendment to the RMP.

    1.    <u>Any potential claim against the either the 1981 HMAP or the 1997 RMP is "time-barred"</u>

The Plaintiffs' challenge to the 1981 HMAP and 1997 RMP must be dismissed because they are barred by the six year statute of limitations. See Trafalgar Capital Assocs., Inc. v. Cuomo, 159 F.3d 21, 34 (1st Cir. 1998) (federal statute of limitations (28 U.S.C. § 2401) applies to actions brought under the APA). See also Wind River Mining Corp v. United States, 946 F.2d 710, 714-715 (9th Cir. 1991) (challenges to the wisdom of a governmental policy must be brought within six years of the accrual of the action). Any claim Plaintiffs might have had relating to BLM's 1981 HMAP is now barred. Similarly, any potential claims that could have

12

been asserted against the RMP accrued in 1997 when BLM issued its Record of Decision and

EIS.  A cause of action accrues under the APA when the person challenging the administrative

action "can institute and maintain a suit in court."  <u>Trafalgar</u>, 159 F.3d at 35.  Plaintiffs have had

ample opportunity to challenge these two BLM planning initiatives as they pertain to wild

horses; by law they cannot and should not be permitted to raise objections now.  Because

Plaintiffs failed to timely challenge the resource-management decisions at issue in this litigation,

their claims must be dismissed.

2.    <u>The specific resource management planning goals challenged by<br>Plaintiffs do not qualify as reviewable "final agency actions"</u>

Even if this Court finds that Plaintiffs' claims are not time-barred, their challenges to the

legality of specific management planning goals contained in the so-called "Instruction

Memorandum," 1981 HMAP, and 1997 RMP are not reviewable "final agency actions" pursuant

to §704 of the APA.  Federal Courts are not authorized to review agency policy choices in the

abstract.  <u>Fund for Animals</u>, 460 F.3d at 18-22.  In the absence of a specific statutory review

provision the APA provides a cause of action to "[a] person suffering legal wrong because of an

*agency action*, or adversely affected or aggrieved by *agency action*."  <u>See</u> <u>id.</u>; <u>see also</u> 5 <u>U.S.C. §</u>

<u>702</u> (emphasis added).  "Review under the APA is further limited to a '*final agency action'* for

which there is no other adequate remedy in a court.'"  <u>Fund for Animals</u>, 460 F.3d at 18 (quoting

5 U.S.C. §704) (emphasis added).  "Whether there has been 'agency action' or 'final agency

action' within the meaning of the APA are threshold questions; if these requirements are not met,

the action is not reviewable."  <u>Id.</u>  The APA defines an "agency action" as "the whole or

equivalent part of an agency rule, order, license, sanction, relief, or the equivalent denial

13

thereof."  5 U.S.C. § 551(13).  While this list is expansive, this Circuit has "long recognized that

the term [agency action] is not so all encompassing as to authorize us to exercise judicial review

over everything done by an administrative agency."  Fund for Animals, 460 F.3d at 19; see also

Indep. Equip. Dealers Ass'n v. EPA, 362 U.S. App. D.C. 53, 372 F.3d 420, 427, (D.C. Cir.

2004).  "Much of what an agency does is in anticipation of agency action."  Fund for Animals,

460 F.3d at 19.  "Agencies prepare proposals, conduct studies, meet with Members of Congress

and interested groups, and engage in a wide variety of activities that comprise the common

business of managing government programs."  Id.  "Courts may 'intervene in the administration

of laws only when, and to the extent that, a specific 'final agency action' has an actual or

immediately threatened effect.'"  Id. at 20 (quoting Lujan v. National Wildlife Federation, 497

U.S. 871, 890-94 (1990)).  Nor may courts"entang[le] themselves in abstract disagreements over

administrative policies . . . until an administrative decision has been formalized and its effects

felt in a concrete way."  See Ohio Forestry Association, Inc. v. Sierra Club, 523 U.S. 726, 732-

33 (1998).

    The "Instruction Memorandum" cited by Plaintiffs in their first amended complaint is not

an "*agency action*" within the meaning of § 702 of the APA.  The Court of Appeals for this

Circuit made this explicitly clear in the Fund for Animals case discussed above.  See Fund for

Animals, 460 F.3d at 18-21 (agency documents, such as the "Instruction Memorandum" and

budgetary requests evidencing a "general national planning approach" are not reviewable agency

actions within the meaning of the APA).

    Similarly, the Plaintiffs' challenges to BLM's broad planning goals related to

management of wild horses contained in both the 1981 HMAP and 1997 RMP are not

reviewable as *final* agency actions because they do not qualify as circumscribed, discrete agency actions. See id. at 20. Neither the 1981 HMAP nor the 1997 RMP establish a legal right to gather horses or abolish any legal authority to object to horses being gathered. See Ohio Forestry, 523 U.S. at 728-730 (1998). They are not the kind of final agency actions that have an "actual or immediately threatened effect." See Lujan, 497 U.S. at 890-94. They do not "command anyone to do anything or to refrain from doing anything; they do not grant, withhold, or modify any formal legal license, power, or authority; they do not subject anyone to any civil or criminal liability; they create no legal rights or obligations." See Fund for Animals, 460 F.3d at 22. The D.C. Circuit has consistently refused to review agency orders "that do[] not [themselves] adversely affect complainant[s] but only affect [their] rights adversely on the contingency of *future* administrative action." Id. (emphasis added). In contrast to the Final Decisions implementing the East and West Douglas Gathers (Exhs. D and E attached), the 1981 HMAP is an activity plan that merely provides guidance and authorization for *future* action. Reducing horse populations in the HMA by 1985, and the eventual removal of all horses west of Douglas Creek, are not final agency decisions sufficient to grant Plaintiffs an immediate cause of action under the APA. See Lujan, 497 U.S. at 891. By its own terms, the 1981 HMAP states that "all projects and gathering operations will be subject to constraints within the MFP and will undergo a site specific environmental assessment prior to any on-the-ground work." See Exh. B at p. 16. The East and West Douglas Gathers challenged by the Plaintiffs in this litigation were not initiated directly pursuant to the 1997 RMP; rather, they were subject to site-specific analyses with individual implementing decisions. See Exhs. D and E attached. The long-standing practice in this Circuit is "to require the complaining party to challenge the specific

15

implementation of the broader agency policy." <u>Fund for Animals</u>, 460 F.3d at 22; <u>see also</u> <u>Ohio</u>

<u>Forestry</u>, 523 U.S. at 737 (like forest plans, Congress has not provided for pre-implementation

judicial review of  land use plans).  As such, Plaintiffs' claims challenging wild horse

management planning goals as contained in the 1981 HMAP and the 1997 RMP must be

dismissed.

3.    <u>BLM's Proposed Amendment to the RMP is not a "final agency action"</u>

Finally, this Court does not have jurisdiction to review anything related to the proposed

amendment to the RMP unless and until a final agency action is made with regard to this

proposal.  <u>See</u> <u>5 U.S.C. §704</u>.  As a general matter, two conditions must be satisfied for agency

action to be "final": First, the action must mark the "consummation" of the agency's

decisionmaking process, it must not be of a merely tentative or interlocutory nature.  <u>Bennett v.</u>

<u>Spear</u>, 520 U.S. 154, 177-178 (1997).  Second, the action must be one by which "rights or

obligations have been determined," or from which "legal consequences will flow."  <u>Id.</u>  In the

case at hand, neither of the two dispositive requirements have been met by the Plaintiffs.  The

BLM has not yet issued a final decision in response to protests lodged against the proposed

amendment, and as such, the Plaintiffs' rights or obligations have not matured to the point at

which *any* legal consequences will flow.  Because there has been no final agency action pursuant

to §704 of the APA, this Court lacks jurisdiction and Plaintiffs' claim must be dismissed.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' first amended complaint should be dismissed.

Respectfully submitted this 29th day of December, 2006

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

Environment & Natural Resources Division
JEAN E. WILLIAMS, Chief
Wildlife and Marine Resources Section
CHARLES FINDLAY, Assistant Chief
PAUL. D. LALL, Trial Attorney

-

 _s/ Kevin J. Larsen_
KEVIN J. LARSEN,
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044
202.305.0258
202.514.8164 (fax)

Attorneys for Defendants

17