UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
COLORADO WILD HORSE AND BURRO           )
COALITION, INC., et al.,                )
                                        )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        No. 06-1609 RMC
                                        )        Judge Rosemary M. Collyer
DIRK KEMPTHORNE, et al.,                )
                                        )
                                        )
            Defendants.                 )
_____)


**<u>FEDERAL DEFENDANTS' REPLY IN SUPPORT</u>**
**<u>OF MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    Plaintiffs' Challenges to the Legality of the East and West Douglas Gathers, the
1981 HMAP, and the "Instruction Memorandum" are Moot  . . . . . . . . . . . . . . . 2

1.    Plaintiffs' claims as to the completed gathers are moot  . . . . . . . . . . . . . 3

2.    Plaintiffs' claims against the "Instruction Memorandum" and outdated
planning documents are moot  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B.    Plaintiffs' Challenges to the 1981 HMAP and the 1997 RMP are Barred by the
Applicable Statute of Limitations, 28 U.S.C. § 2401(a)  . . . . . . . . . . . . . . . . . . . . 8

C.    Plaintiffs' Challenge to the *Proposed* Amendment to the 1997 RMP remains
unripe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Bennett v. Spear,
        520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Colorado Off Highway Vehicle Coalition v. U.S. Forest Service,
        357 F.3d 1130 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Duncan v. Walker,
        533 U.S. 167 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Friends of the Earth, Inc. v. Bergland,
        576 F.2d 1377 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fund for Animals v. BLM,
        460 F.3d 13 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6,7 ,12

Gulf Oil Corp. v. Brock,
        778 F.2d 834 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Norton v. SUWA,
        542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ohio Forestry Ass'n v. Sierra Club,
        523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sierra Club v. Penfold,
        857 F.2d 1307 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Super Tire Eng'g Co. v. McCorkle,
        416 U.S. 115 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

TRW Inc. v. Andrews,
        534 U.S. 19 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wilderness Society v. Norton,
        03-64 RMC, 2005 WL 3294006, *1(D.D.C. Jan. 10, 2005) . . . . . . . . . . . . . . . . . . . 10

 Wilderness Society v. Norton,

    434 F.3d 584 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Wilderness Watch and Public Employees for Environmental Responsibility v. Mainella,

    375 F.3d 1085 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wind River Mining Corp. v. Lujan,

    946 F.2d 710 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

5 U.S.C. §704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 U.S.C. § 706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

16 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16 U.S.C. § 1333(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

**INTRODUCTION**

For all its length, Plaintiffs' Memorandum and Opposition to Defendants' Motion to Dismiss (Pls.' Opp., Dkt. No. 29) does nothing to refute Defendants' argument that their complaint should be dismissed. As Defendants explained in their opening brief, Plaintiffs' claims with respect to the 1997 Resource Management Plan for the White River Area ("1997 RMP") and early planning documents are time-barred; their claims with respect to the Bureau of Land Management s ( BLM ) two decisions in July and August 2006 to gather and remove wild horses from the East Douglas Herd Management Area ("HMA") and the West Douglas Herd Area ("HA") are moot; and their claims with respect to the proposed amendment to the 1997 RMP are not yet ripe. In response, Plaintiffs' Opposition makes a number of unavailing arguments. Some of these arguments are vague, while others are completely inconsistent. For example, in an attempt to avoid dismissal of certain claims, Plaintiffs assert that they are not making a facial challenge to the 1997 RMP and BLM's planning documents. Pls.' Opp. at 14. Two pages later, they claim that they are challenging "BLM's overall scheme to zero-out wild horses from the West Douglas and Piceance-East Douglas Herd Areas...." Pls.' Opp. at 16. It cannot be both.

At bottom, Plaintiffs' Opposition reflects a dissatisfaction with BLM's decisions from July and August 2006 to roundup wild horses and a hope to prevent future roundups that are not yet planned. However, as discussed below, the roundups conducted in the West Douglas HA and Piceance-East Douglas HMA pursuant to the July and August 2006 decisions are complete and there is no relief that Plaintiffs can obtain in this case. Furthermore, BLM has not made a final decision to gather and remove additional horses from these areas. If BLM chooses to do so

- 1 -

in the future, it will issue new decisions and provide the public with an opportunity to comment upon the final decisions before they are implemented. Plaintiffs or any other aggrieved party may also choose to initiate a lawsuit at that time. There is simply no imminent case or controversy before this Court and Plaintiffs' Amended Complaint should be dismissed in its entirety.

**ARGUMENT**

A.    **Plaintiffs' Challenges to the Legality of the East and West Douglas Gathers, the 1981 HMAP, and the "Instruction Memorandum" are Moot.**

In their Opposition, Plaintiffs contend that their Amended Complaint broadens the scope of this litigation to include more than simply challenging the legality of Piceance-East Douglas and West Douglas roundups, which they concede are now completed. See Pls.' Opp. at 16-17. Instead, Plaintiffs claim that they have "challenged BLM's overall scheme to zero-out wild horses from the West Douglas and Piceance-East Douglas Herd Areas, by removing all horses from their herd areas or, alternatively, reducing the herds to genetically unviable numbers, of which the completed roundups are component actions."[1] Id. at 16. Plaintiffs continue to fail to identify a final agency decision over which this Court has jurisdiction that calls for the so-called "zeroing out" of any wild horse herd. As set forth in the Defendants' motion to dismiss, the only final agency decisions before this Court are the Notices of Final Decision with respect to the completed gathers (see Exs. D and E to Defs.' Mem. of Law in Support of Mot. to Dismiss, Dkt. No. 27 ("Defs.' Br.")). Because these gathers are complete, Plaintiffs' claims as to them are

---

[1]  As noted above, Plaintiffs argue to the contrary elsewhere in their brief. On page 14 of Plaintiffs' Memorandum, in a seeming attempt to circumvent statute of limitations issues, they suggest that this litigation does not involve a facial challenge to BLM's actions. See Pls.' Opp. at 14.

moot.  Plaintiffs' challenge to the legality of the 1981 MFP is also moot because the 1997 RMP
replaces and supercedes any previous BLM resource management plan.  Finally, Plaintiffs' claim
as to the so-called "Instruction Memorandum" is moot not only because the document by its own
terms expired in 2003, but also because the Instruction Memorandum is not a final agency action
over which this Court can exercise judicial review.

1.    <strong>Plaintiffs' claims as to the completed gathers are moot.</strong>

Plaintiffs cite authority, none of which is factually on-point, in support of their contention
that their moot claims as to the completed gathers are saved from the narrow exception for those
cases capable of repetition, yet evading review.  Id. at 17.  Plaintiffs claim that they "have
obtained BLM's annual roundup schedule for 2007 issued from the Secretary's office within the
BLM" and "West Douglas is listed as being scheduled for a roundup in February 2007."  See
Pls.' Opp. at 18.  Plaintiffs have not submitted this document (even though they have submitted
numerous other exhibits) and it is not clear what they are referring to.  While BLM was unable to
remove as many wild horses as it had anticipated in the July and August 2006 decisions, see Ex.
A to Defs.' Memo at ¶¶ 14-16, the BLM has completed these gathers and will not capture any
more wild horses pursuant to these decisions, see id. ¶ 18.  As Kent Walter stated in the
declaration attached to Defendants' opening brief, "[i]f BLM chooses to remove additional wild
horses from these areas in the future, it will issue new decisions and provide the public with an
opportunity to comment and protest the final decisions before they are implemented."  Id.

In their Opposition, Plaintiffs claim that BLM roundups "evade review because their
extremely short duration makes it virtually impossible to litigate fully any one gather and
removal operation before its completion."  Pls.' Opp. at 18-19.  This argument is meritless.

- 3 -

BLM specifically notified the Plaintiffs in this case of the two roundup decisions when they were proposed in June 2006. BLM also sent Plaintiffs the final decisions as soon as they were issued and it did not implement the decisions for almost two months. BLM will continue to notify the public of any future roundup decisions and these plaintiffs or any other member of the public will have an opportunity to comment and protest the decisions before they are implemented. More importantly, the D.C. Circuit has explicitly held that decisions to remove wild horses are highly fact specific and do not present "issues or wrongs capable of repetition yet evading review." Fund for Animals v. BLM, 460 F.3d 13, 22 (D.C. Cir. 2006) (citation omitted). The court explained:

> Particular decisions to remove wild horses and burros are highly fact-specific. How a herd will be managed in the future after the initial culling is anyone's guess, as the Bureau makes clear. It may depend on climate, on how many new births occur, on the mortality rate of the horses, on whether fertility control is used as a management tool, and on many other factors specific to a herd and to the area in which it is located. Once appropriate management levels have been achieved, the 'schedule for maintaining those AMLs will be developed based on the individual needs of each herd.' If there are to be more roundups in the future-itself an open question-it remains to be seen whether they will be of the same magnitude as those which have come before, and whether the same criteria are applied.

Id. at 22-23. Try as they may, Plaintiffs cannot escape this unequivocal directive from the D.C. Circuit that it is impossible for this Court to "grant any effectual relief whatever with respect to the challenged gathers" as "they cannot be undone." Id. at 22 (citation omitted). Furthermore, BLM has not made any final decision about roundups that may occur in the future and Plaintiffs cannot challenge a final decision that has not been made. As the BLM explained in Fund for Animals (and the court agreed with), any future decision to remove wild horses will likely depend on a number of factors presently unknown, such as population growth, range conditions and weather. Id. at 22-23.

Plaintiffs also argue that their claims should not be considered moot because the gathers were completed at least in part because of "voluntary cessation" on the part of BLM.  See Pls.' Opp. at 20.  This argument is equally meritless.  As discussed above, any subsequent decision to re-commence roundups of wild horses in the Piceance East Douglas HMA or the West Douglas HA would require BLM to propose and issue a new final decision. See Defs.' Br. at 6; see also Ex. A to Defs.' Br. at ¶ 18.  BLM will not resume removing wild horses pursuant to the roundup decisions issued in July and August of 2006.  Id.  As a result, their claims related to these two decisions are moot.  See Wilderness Watch and Public Employees for Environmental Responsibility v. Mainella, 375 F.3d 1085, 1090 (11th Cir. 2004) (dismissing plaintiffs' claims as moot because there was no reasonable expectation that a voluntarily ceased policy by the National Park Service would resume).[7]

Plaintiffs cite Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 121-22 (1974) to support the proposition that a court's ability to issue declaratory judgment is fatal to a mootness challenge.  See Pls.' Opp. at 17.  Super Tire, however, is entirely inapposite here.  In that case, two corporate plaintiffs sued New Jersey state officials alleging that state labor regulations were facially null and void because they interfered with federal labor laws.  Super Tire, 416 U.S. 117-18.  Plaintiffs sought declaratory and injunctive relief claiming that New Jersey's regulations illegally provided public assistance to the plaintiffs' workers who had gone on strike.  Id.  at 120.  Before the court ruled on the merits of plaintiffs' claims, the strike ended.  The Third Circuit

---

[7] Notably, Plaintiffs in this case were specifically notified of the proposed 2006 roundup decisions in June 2006 and of the final roundup decisions issued in July and August of 2006.  Given that actual roundups did not start for approximately two months after the final decisions, Plaintiffs had more than adequate time to file a case in this Court challenging the decisions.  Plaintiffs' Opposition fails to demonstrate that any future roundup decision will be complete before they can challenge it.

accepted an argument by the state defendants and labor-union intervenors that the case should be dismissed because plaintiffs' claims were moot. The Supreme Court reversed, finding that the New Jersey regulations at issue were "fixed and definite," and not dependent upon "distant contingencies." Id. at 123. Moreover, the court found that there was a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 122 (citation omitted). Central to the court's reasoning was the fact that "the challenged governmental action has not ceased." Id. at 123. The court explained: "A strike that lasts six weeks, as this one did, may seem long, but its termination, ... should not preclude challenge to state policies that have had their impact and that continue in force, unabated and unreviewed." Id. at 126 (emphasis added).

Unlike the New Jersey regulations that were challenged in Super Tire, the two roundup decisions in this case do not "continue in force." As the D.C. Circuit has stated, "[p]articular decisions to remove wild horses and burros are highly fact-specific" and the future necessity to conduct additional roundups is presently unknown. Fund for Animals, 460 F. 3d at 22. Thus there remains no substantial controversy of sufficient immediacy and reality to warrant the issuance of declaratory judgment in this case. See Super Tire, 416 U.S. at 122. Any future decision to conduct roundups must be subject to a new final decision by BLM. Thus, as set forth in detail in the Defendants' motion to dismiss, any declaratory relief this Court might grant to the Plaintiffs in this case would be merely advisory in nature, and improper. See Gulf Oil Corp. v. Brock, 778 F.2d 834, 838 (D.C. Cir. 1985) (the "case or controversy" requirement is understood to prohibit federal courts from issuing advisory opinions based upon hypothetical factual situations). Where the activities a plaintiff seeks to have enjoined have already occurred, and the

courts cannot undo what has already been done, the action is moot.  See Sierra Club v. Penfold, 857 F.2d 1307, 1318 (9th Cir. 1988); see also Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir. 1978).

> **2.     Plaintiffs' claims against the "Instruction Memorandum" and outdated planning documents are moot.**

In an attempt to keep the "Instruction Memorandum" relevant to the present litigation, Plaintiffs devote considerable time and effort to distinguishing the plain meaning of the D.C. Circuit's holding in Fund for Animals with specific emphasis on language from the opinion's dissent.  See Pls.' Opp. at 22.  By relying on the dissent, Plaintiffs effectively admit that their claims fail under the majority's holding.  Furthermore, despite Plaintiffs' assertions to the contrary, the Court did not limit its mootness holding strictly to claims brought under the National Environmental Policy Act ( NEPA ).  See id.  In fact, the Court indicated that because the memorandum was expired, any issues which could have been raised regarding the Instruction Memorandum's legality were moot.  See Fund for Animals, 460 F.3d at 18.  Moreover, the Court specifically held that the Instruction Memorandum, like the Presidential Budget Initiative discussed therein, is not "agency action" within the meaning of § 702 of the Administrative Procedure Act ("APA"), much less "final agency action" within the meaning of § 704.  See id. at 18-19.  Therefore, this Court lacks jurisdiction to review the so-called Instruction Memorandum.

Likewise, the claim asserted against earlier land use planning documents like the 1981 MFP is moot.  See Colorado Off Highway Vehicle Coalition v. U.S. Forest Service, 357 F.3d 1130, 1133-34 (10th Cir. 2004) (claim that agency failed to comply with earlier version of Forest Plan rendered moot by issuance of new Plan).

**B.    Plaintiffs' Challenges to the 1981 HMAP and the 1997 RMP are Barred by the Applicable Statute of Limitations, 28 U.S.C. § 2401(a)**

Plaintiffs' Amended Complaint also challenges the boundaries of the Piceance-East Douglas HMA as set forth in the 1997 RMP.  See Ex. C to Defs.' Br. at 2-26.  In their opening brief, Defendants explained why Plaintiffs' claims challenging the 1981 HMAP and the 1997 RMP are barred by the six-year statute of limitations under  28 U.S.C. § 2401(a).  See Defs.' Br. at 12-13.  In their Opposition, Plaintiffs acknowledge the principle stated in Wind River Mining Corp. v. Lujan, 946 F.2d 710 (9th Cir. 1991) that "policy-based facial challenges to an agency's action must be brought within six years."  Pls.' Br. at 14.  Thus, to the extent that Plaintiffs' claims make a facial challenge to the 1981 HMAP and the 1997 RMP, they are, by their own admission, barred by the six-year statute of limitations under  28 U.S.C. § 2401(a).  See Wind River Mining Corp., 946 F.2d at 715.  Nonetheless, in an attempt to distinguish that case, Plaintiffs claim that they are challenging specific actions taken by the BLM, "not mere 'policy' decisions."  Pls.' Br. at 14.  As an initial matter, Plaintiffs' argument makes no sense.  If Plaintiffs are challenging only specific actions that implement the 1981 HMAP and the 1997 RMP, then their claims with respect to the gathers conducted pursuant to the BLM's roundup decisions from July and August 2006 are moot and there are no other final agency actions that this Court can review. See supra, Part A.

In an attempt to escape this conclusion, Plaintiffs assert that they are challenging "agency inaction" that is a continuing violation of the Wild Horse and Burros Act.  Pls.' Br. at 15.  More specifically, Plaintiffs argue that their claims are based on "Defendants' failure to recognize the historic use area of the wild horses from the P-ED HMA and the WD HA."  Pls.' Br. at 15.  It is not clear what Plaintiffs mean by the term "recognize."  To the extent that they intended to argue

- 8 -

that the BLM has an affirmative duty to create wild horse management boundaries that correspond directly to where they were found in 1971, Plaintiffs' argument is unavailing.  Under the Wild Horse and Burros Act, "the Secretary [of Interior] is authorized and directed to protect and manage wild free-roaming horses and burros as components of the public lands..."  16 U.S.C. § 1333(a).  However, it also states that "he may designate and maintain specific ranges on public lands as sanctuaries for their protection and preservation, where the Secretary... deems such action desirable."  Id. (emphasis added).  Plaintiffs' apparent claim that the BLM must protect and preserve horses on all areas of public lands where wild horses were found in 1971 must fail because if it were correct, this language in the Wild Horse and Burros Act would be superfluous.  See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)).  Congress would not have granted the Secretary discretion to "designate and maintain specific ranges" if the Secretary is required to maintain horse populations everywhere within their "historic use area," as Plaintiffs contend.

Plaintiffs cite Wilderness Society v. Norton, 434 F.3d 584 (D.C. Cir. 2006) in support of their argument that the BLM's "failure to recognize the historic use area of the wild horses" is continuing violation of the Wild Horse and Burros Act.  The court's reasoning in that case is not applicable here because of marked differences between the laws at issue.  The statute at issue in Wilderness Society was the Wilderness Act, which "directs the Secretary to review all lands in the National Park System for wilderness suitability, to provide an opportunity for public input, and to recommend wilderness-suitable lands to the President for wilderness designation."

Wilderness Society v. Norton, 03-64 RMC, 2005 WL 3294006, *1 (D.D.C. Jan. 10, 2005).  The

plaintiff alleged that the National Park Service ("NPS") violated § 706(1) of the Administrative

Procedure Act, which permits a court to "compel agency action unlawfully withheld or

unreasonably delayed."  Wilderness Society, 434 F.3d at 587.  More specifically, it claimed that

the NPS had failed to "take specific actions to review and protect wilderness-quality lands in the

National Park System, in violation of the Wilderness Act."  Id.  Defendants filed a motion for

judgment on the pleadings, asserting, in part, that the plaintiff lacked standing and that certain

claims must be dismissed because they are time-barred under 28 U.S.C. § 2401(a).  See

Wilderness Society, 2005 WL 3294006 at *3-*5.  The plaintiff conceded that its claims that the

NPS had failed to comply with a statutory deadline to recommend wilderness-suitable lands in

the National Park System accrued more than six years before it initiated the lawsuit.  Id at *5.  It

argued, however, that the NPS's failure to complete this process "constitutes a 'continuing'

violation as to which no statute of limitations has yet run."  Id.  This Court rejected plaintiff's

argument stating: "The 'continuing violation' theory cannot save the claims because the time for

performance was explicit and the alleged failure to comply so immediately obvious."  Id. at *8.

On appeal, the D.C. Circuit held that the plaintiff-appellant lacked standing to assert its

statutory claims.  In dicta, the court stated that the plaintiff-appellant "appears to be right" in its

contention that its statutory claims were not time-barred.  Wilderness Society, 434 F.3d at 588.

It explained: "This court has repeatedly refused to hold that actions seeking relief under 5 U.S.C.

§ 706(1) to 'compel agency action unlawfully withheld or unreasonably delayed' are time-barred

if initiated more than six years after an agency fails to meet a statutory deadline."  Id.

This reasoning is inapplicable to the instant case because the Wild Horse and Burros Act

does not <u>require</u> the action Plaintiffs allege and, thus, cannot implicate mandatory relief under 5

U.S.C. § 706(1). <u>See</u> <u>Norton v. SUWA</u>, 542 U.S. 55, 64 (2004) ("a claim under §706(1) can

proceed only where a plaintiff asserts that an agency failed to take a <u>discrete</u> agency action that it

is <u>required</u> to take.") (emphasis added).  Unlike the Wilderness Act, the Wild Horse and Burros

Act does not contain an affirmative obligation to "recognize" wild horse management boundaries

that correspond to every location where they were found in 1971.  While the statute declares that

wild horses generally "are to be considered in the area where presently found, as an integral part

of the natural system of the public lands," 16 U.S.C. § 1331, it does not direct the Secretary to

prioritize wild horses over other uses of public lands.  Rather, the Secretary of the Interior

(through the BLM) must "manage wild free-roaming horses and burros in a manner that is

designed to achieve and maintain a thriving natural ecological balance on the public lands."  16

U.S.C. § 1333(a).  To this end, the statute authorizes and directs the Secretary "to protect and

manage wild free-roaming horses and burros as components of the public lands, and he may

designate and maintain specific ranges on public lands as sanctuaries for their protection and

preservation."  <u>Id.</u>

    While Plaintiffs clearly disagree with the BLM's affirmative actions to comply with the

Wild Horse and Burros Act, they cannot plausibly maintain that the BLM has failed to act.

Otherwise, every agency action challenged by a plaintiff could be characterized as "agency

inaction."  If and when the BLM makes a new decision to gather and remove wild horses from a

particular area, it will issue new decisions and provide the public with an opportunity to

comment and protest the final decisions before they are implemented.  Furthermore, Plaintiffs or

any other aggrieved party may choose to initiate a lawsuit at that time.

C.    **Plaintiffs' Challenge to the *Proposed* Amendment to the 1997 RMP remains unripe.**

Plaintiffs argue that this Court has jurisdiction to review the proposed amendment to the 1997 RMP, which they acknowledge is not yet a final agency action.  See Pls.' Opp. at 26-27. Plaintiffs provide this Court with nothing in the way of legal authority demonstrating its reviewability over pending amendments to resource management plans.  Rather, they rely upon unsubstantiated accusations of so-called "administrative stonewalling." Pls.' Opp. at 27. As set forth in Defendants' opening brief, the existence of a final agency action is a threshold determination that must be made prior to the exercise of any jurisdiction by courts.  See Defs.' Br. at 14; see also Fund for Animals, 460 F.3d at 18 ("Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable."); 5 U.S.C. §704.  As a general matter, two conditions must be satisfied for agency action to be "final."  First, the action must mark the "consummation" of the agency's decisionmaking process; it must not be of a merely tentative or interlocutory nature.  Bennett v. Spear, 520 U.S. 154, 177-178 (1997).  Second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."  Id.  In this case, neither of the two dispositive requirements have been met by the Plaintiffs.  The BLM has not yet issued a final decision in response to protests lodged against the proposed amendment, and as such, the Plaintiffs' rights or obligations have not matured to the point at which *any* legal consequences will flow.

Moreover, the BLM's resolution of the Plaintiffs' protests to the proposed amendment to the 1997 RMP is not dispositive of this Court's jurisdiction as it pertains to BLM's management of wild horse herds in the West Douglas HA.  The Ohio Forestry decision cited in Defendants'

opening brief directs courts to refrain from engaging in pre-implementation judicial review of these types of plans.  See Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 728 (1998).  Any shift in BLM's policy in the amended plan to discontinue management of horses in the West Douglas HA must wait for a site-specific decision implementing the policy.  Id. at 729-733.  As such, Plaintiffs' claims asserted against the proposed amendment to the 1997 RMP must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' first amended complaint should be dismissed in its entirety.

Respectfully submitted this 16th day of March, 2007.


MATTHEW J. MCKEOWN
Acting Assistant Attorney General


Environment & Natural Resources Division
JEAN E. WILLIAMS, Chief
Wildlife and Marine Resources Section
CHARLES FINDLAY, Assistant Chief
PAUL. D. LALL, Trial Attorney

 s/ Kevin J. Larsen
KEVIN J. LARSEN,
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044
202.305.0258
202.514.8164 (fax)

- 13 -

Attorneys for the Federal Defendants