UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO WILD HORSE AND BURRO COALITION, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>DIRK KEMPTHORNE, et al.,<br><br>        Defendants. | Civ. No. 06-1609 RMC<br><br>**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT DISCOVERY** |

**INTRODUCTION**

Federal Defendants submit this memorandum in opposition to Plaintiffs' Motion for Discovery and in support of their Motion for a Protective Order. In their Memorandum in Support of Motion for Leave to Conduct Discovery ("Plaintiffs' Brief"), Plaintiffs repeat many of the same allegations made in their unsuccessful motion for a preliminary injunction. Rather than demonstrating (or even suggesting) that jurisdictional discovery is appropriate, Plaintiffs' Brief attempts to support the merits of their claims. Plaintiffs allege that: 1) the Bureau of Land Management's ("BLM") Instruction Memorandum ("IM") is still in effect, 2) a recent case from the District of Idaho about the Endangered Species Act and the BLM's grazing regulations somehow corroborates the allegations they have made with respect to the IM, and 3) the BLM has waived the attorney-client privilege with respect to all communications concerning "legal advice and opinions regarding the legality of removals of wild horses" that are managed by the BLM's White River Field Office. None of these arguments change the fact that Plaintiffs' claims pending before this Court are moot and not reviewable under the Administrative Procedure Act ("APA") (5 U.S.C. §§ 701-706). See Federal Defendants' Motion to Dismiss (Docket # 27).

As discussed below, each of these allegations is meritless. The D.C. Circuit has already held that claims based on the IM are moot. See <u>Fund for Animals v. BLM</u>, 460 F.3d 13, 18 (D.C. Cir. 2006). Thus, Plaintiffs are attempting to relitigate an issue that was already contested and adjudicated by the D.C. Circuit. Furthermore, the recent decision cited by Plaintiffs from the District of Idaho is irrelevant to this case and in no way suggests that Plaintiffs' requested discovery of facts about the inoperative IM would provide the Court with jurisdiction to hear this case. Finally, Plaintiffs fail to explain how the BLM's alleged waiver of privilege relates to their purported need to take jurisdictional discovery. Their request for privileged documents can be nothing more than a desperate fishing expedition to find a basis for allegations unsuccessfully made in their motion for a preliminary injunction. Accordingly, Federal Defendants respectfully submit that the Court should deny Plaintiffs' Motion and issue a protective order prohibiting Plaintiffs' from taking discovery in this case.

**PROCEDURAL BACKGROUND**

Plaintiffs initiated litigation in this case on September 15, 2006. (Docket # 1). Shortly after filing their initial Complaint, Plaintiffs sought emergency injunctive relief by way of a Motion for Temporary Restraining Order. (Docket # 5). On October 5, 2006, this Court denied Plaintiffs' motion and ordered the parties to confer, and advise the Court whether the case would proceed and, if so, submit a proposed schedule to govern further proceedings. *See* Court's Minute Entry, October 5, 2006. Plaintiffs filed an amended complaint on December 6, 2006. (Docket # 24). Plaintiffs' Amended Complaint sought declaratory judgment regarding the legality of BLM's gather and removal of wild horses in the Piceance-East Douglas Herd Management Area ("Piceance-East Douglas HMA"), and the West Douglas Herd Area ("West Douglas HA"), capture operations that occurred in September and October, 2006, respectively. *See* Federal Defendants' Motion to Dismiss

at 1. Plaintiffs also sought declaratory judgment on the legality of the IM, the 1981 Herd Management Area Plan ("1981 HMAP"), and the 1997 Resource Management Plan ("1997 RMP"). *Id.* Finally, Plaintiffs Amended Complaint sought declaratory judgment on the legality of a proposed amended Resource Management Plan (RMP), which remains pending BLM review. *Id.*

On December 29, 2006, the Federal Defendants moved to dismiss the Amended Complaint (Docket # 27) in part upon the bases that (1) the federal actions challenged by Plaintiffs (horse gather/removals) were complete thus mooting Plaintiffs' claims; (2) Plaintiffs' claims based on the expired IM were moot *and* were not final agency actions within the meaning of the APA; and (3) Plaintiffs' challenge to proposed, but not yet final decisions to remove horses from the West Douglas Herd Area were unripe. *See* Defendants' Motion to Dismiss at 9-16. Plaintiffs filed their opposition to the Motion to Dismiss on February 2, 2007. (Docket # 29). The Federal Defendants' Reply in Support of the Motion to Dismiss was filed on March 16, 2007. (Docket # 35). Plaintiffs waited nearly four months after the close of briefing in this matter to file their request for leave to conduct jurisdictional discovery. *See* Docket # 36. There have been no material changes in the facts surrounding the parties' dispute since the close of briefing on the Federal Defendants' Motion to Dismiss. The gather/removal operations are still complete, the IM remains expired and no final decision has yet been rendered with respect to wild horse herds presently living in the West Douglas Herd Area.

## LEGAL BACKGROUND

It is well-settled that judicial review of an agency action under the Administrative Procedure Act, such as the one at issue in this case, is generally limited to the administrative record. See Camp v. Pitts, 411 U.S. 138, 142 (1973); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413-421 (1971) "The focal point for judicial review should be the administrative record already in

existence, not some new record completed initially in the reviewing court." Environmental Def. Fund v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981). If the court determines the administrative record is not sufficient to evaluate the agency's decision, the proper course of action, "except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." Florida Power & Light Co. v. United States Nuclear Regulatory Comm'n, 470 U.S. 729, 744 (1985); see also James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1096 (D.C. Cir. 1996) ("Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions.")

The question of whether a plaintiff is entitled to jurisdictional discovery "lies within the district court's discretion." Mwani v. bin Laden, 417 F.3d 1, 17 (D.C. Cir. 2005). The D.C. Circuit has stated that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000). However, a plaintiff requesting jurisdictional discovery must make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." United States v. Philip Morris, 116 F. Supp. 2d 116, 130, n. 16. (D.D.C. 2000). Discovery is properly denied in connection with a motion to dismiss on jurisdictional grounds when the court "do[es] 'not see what facts additional discovery could produce that would affect [its] jurisdictional analysis.'" Mwani, 417 F.3d at 17 (quoting Goodman Holdings v. Rafidain Bank, 26 F.3d 1143, 1147 (D.C. Cir. 1994)); see also Medical Solutions v. C Change Surgical, 468 F. Supp. 2d 130, 135-36 (D.D.C. 2006) (granting defendant's motion to dismiss after concluding that plaintiff "failed to show that additional discovery would be beneficial to its

establishment of personal jurisdiction."); COMSAT v. Finshipyards S.A.M., 900 F. Supp. 515, 524, n. 4 (D.D.C. 1995) (discovery "not reasonably necessary to establish jurisdiction" where it would "not help [plaintiff] to learn anything new" and "it would be inappropriate to subject [defendant] to the burden and expense of discovery").

**ARGUMENT**

Although Plaintiffs' intent is not clear, it appears they seek discovery related to the BLM's 2002 Instruction Memorandum in order to establish that the IM still governs BLM's management of wild horses. See Plaintiffs' First Request for Production of Documents to Defendants, attached hereto as Ex. A ("Plaintiffs' Proposed Document Request" at pp. 8-9[1]; see also Compl. ¶¶ 1, 95-97. In the "Prayer for Relief" of Plaintiffs' Complaint, they ask the Court to "[i]ssue an order setting aside BLM's 'Instruction Memorandum'" as contrary to the Wild and Free-Roaming Horses and Burros Act ("Wild Horses Act") and the APA. Compl. Prayer for Relief ¶ 2. Plaintiffs' requested jurisdictional discovery should be denied because the Instruction Memorandum is moot. Fund for Animals, 460 F.3d at 18 ("Because the memo has expired, this claim is moot.").

The claims considered by the D.C. Circuit in Fund for Animals are strikingly similar to those raised by Plaintiffs in this case. In Fund for Animals, the plaintiffs alleged that the BLM's Restoration of Threatened Watersheds' Initiative, presented to Congress in February 2000 as a Presidential Budget Initiative (the "Restoration Strategy"), and the BLM's Instruction Memorandum violated the Wild Horses Act and NEPA. The Instruction Memorandum, issued in February 2002, by an assistant director at BLM, was meant to "communicate guidance and policy" to field offices

---

[1] This discovery request was sent to Defendants exclusively by email and has not been properly served. See Fed. R. Civ. P. 5(b)(2). Thus, Defendants are currently under no obligation to respond. However, assuming the request is properly served in the future, Defendants are cross-moving for a protective order for this request and any other future request for jurisdictional discovery in this case.

regarding "how BLM would achieve [Appropriate Management Levels] in herd management areas by 2005." Fund for Animals, 460 F.3d at 17. The Instruction Memorandum included a chart containing an estimate for the number of horses to be removed on a state-by-state basis; and provided guidance as to a national policy for the age-selective removal of horses from rangelands. See id. The Instruction Memorandum also "outlined the data field offices must collect on each herd in order to prepare 'Population Management Plans,' which 'will detail the population objectives for the herd(s) and the rationale for those objectives. Id. As the D.C. Circuit noted:

> The instruction memorandum stated that it would be 'effective for all gathers beginning upon receipt and will expire on September 30, 2003.' The Bureau's Manual specifies that instruction memoranda 'are of a short-term, temporary nature' and are 'in effect for a short period of time.' The February 2002 memorandum explained that the Bureau's policy regarding the removal of wild horses is 'reviewed and revised each year in an effort to balance the need to achieve AML, minimize the time excess animals are held in BLM facilities awaiting adoption and enhance our ability to place those animals into private maintenance and care.'

Id. (emphasis added). The court concluded, "[b]ecause the memo has expired, this claim [challenging the Instruction Memorandum] is moot." Fund for Animals, 460 F.3d at 18 (citing In re Bluewater Network, 234 F.3d 1305, 1314 (D.C. Cir. 2000)).

Plaintiffs' Brief attempts to escape the D.C. Circuit's reasoning by quoting a section from the dissent that questioned whether the Instruction Memorandum is still effective. See Pls.' Br. at 3 (quoting Fund for Animals, 460 F.3d at 24 (Griffith, J. dissenting)). However, the majority opinion adequately addresses this concern, stating:

> The government's concession that 'the general national planning approach set forth in the February 2002 memorandum continues to serve as guidance to the field for the conduct of specific gather and removal decisions,' Br. of Appellees 25 n.6, cannot support the weight the Fund would place on it.... Neither can it support our partially dissenting colleague's argument. The government notes that 'the record provides no evidence of [the Memorandum's] continued implementation.' Br. of Appellees 25 n.6. The absence of record evidence does not create a genuine issue of material fact. This is especially so with respect to questions of mootness. The Fund states in

>   a footnote that 'BLM has never claimed that it is no longer implementing the ... Memorandum.'  Br. of Appellants 12 n.4.  This is hardly "evidence" that the expiration date does not mean what it says.

Id. at 18-19 (internal citations omitted).  Thus, Plaintiffs' claim that Federal Defendants' position here is "directly at odds" with the terms of the Instruction Memorandum and with "representations made to the D.C. Circuit in Fund for Animals," Pls.' Br. at 3, is meritless.  The D.C. Circuit has already considered and rejected almost identical allegations.

Like the plaintiffs in Fund for Animals, Plaintiffs here also challenge the BLM's Restoration Strategy.  See Declaration of Barbara Flores, attached as Ex. 2 to Pls.' Br. (repeating allegations that BLM staff who worked on the Restoration Strategy told her in 1999 or 2000 that he was instructed to ignore the impact of livestock on BLM lands).  However, the D.C. Circuit explicitly held that the Restoration Strategy was not a final agency action reviewable under the APA.  The Circuit explained: "Our conclusion that the Bureau's [Restoration Strategy] is not reviewable under the APA is of a piece with this court's consistent refusal to review agency orders 'that do[ ] not [themselves] adversely affect complainant but only affect[ ] his rights adversely on the contingency of future administrative action.'"  Id. at 22 (quoting DRG Funding Corp., 76 F.3d 1212, 1214 (D.C. Cir. 1996)).  The same reasoning applies in this case.  Thus even if Ms. Flores' allegations were true - which Federal Defendants dispute - it would be irrelevant to the question of whether the Restoration Strategy is reviewable under the APA.  As such, no amount of discovery will permit the plaintiffs to establish jurisdiction on this claim.[2/]

---

[2/] Moreover, the recent decision in Western Watersheds Project v. Kraayenbrink, CV-05-297, 2007 WL 1667618 (D. Idaho 2007) does not support Ms. Flores' allegations or Plaintiffs' claims.  In that case, the court held that BLM grazing rules violated NEPA, FLPMA and the Endangered Species Act ("ESA"). See Ex. 1 attached to Pls.' Br.  With respect to the ESA, the Court held that the BLM was not permitted to rely on informal consultation with the U.S. Fish and Wildlife Service to satisfy the ESA's requirement that it "insure that any action... carried out by [the] agency... is not likely to jeopardize the continued existence of any endangered or threatened species." ESA Section 7, 16 U.S.C. § 1536.  Wild horses are

Plaintiffs fail to make a "detailed showing of what discovery [they wish] to conduct or what results [they] think such discovery would produce." Philip Morris, 116 F. Supp. 2d at 130, n. 16. For example, Plaintiffs' Proposed Document Request seeks "[a]ny and all documents, including but not limited to, memoranda, correspondence, emails, notes, and reports, relating to the adoption, amendment, modification or revision of the Instruction Memorandum." Ex. A at 8. However, information in old documents, emails and drafts related to the Instruction Memorandum are irrelevant to this case because the document has expired according to its plain terms. This is exactly what the D.C. Circuit held in Fund for Animals. In the absence of a showing that the D.C. Circuit's holding in Fund for Animals was incorrect, "it would be inappropriate to subject [defendants] to the burden and expense of discovery" on this issue. COMSAT, 900 F. Supp. at 524, n. 4.

Finally, Plaintiffs' argument that the BLM has waived privilege with respect to attorney-client communications about removal of wild horses from the White River Resource Area is irrelevant to the issue of whether jurisdictional discovery – over four months after all parties had briefed a motion to dismiss – is appropriate. Plaintiffs' brief asserts that they think the privilege has been waived, but they do not even attempt to explain how these documents might show that there is a final agency action in this case that is subject to judicial review. See Mwani, 417 F.3d at 17; Medical Solutions, 468 F. Supp. 2d 130, 135-36.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court deny

---

not covered by the ESA and the decision did not discuss or even suggest that the BLM's management of wild horses is somehow improper. In addition, plaintiffs in that case challenged grazing rules contained in a Final Rule and Record of Decision that took effect on August 11, 2006. See Ex. 1 to Pls.' Br. at 18. By contrast, the Instruction Memorandum in this case is no longer in effect and Plaintiffs' Complaint and Brief fail to identify a final agency action that is subject to judicial review under the APA.

- 8 -

Plaintiffs' Motion for Leave to Conduct Discovery and grant Federal Defendants' Motion for a Protective Order.

Respectfully submitted this 18th day of July, 2007.

>RONALD J. TENPAS
>Acting Assistant Attorney General
>Environment & Natural Resources Division
>JEAN E. WILLIAMS, Chief
>Wildlife and Marine Resources Section
>CHARLES FINDLAY, Assistant Chief
>PAUL. D. LALL, Trial Attorney
>
> *s/ Kevin J. Larsen*
>KEVIN J. LARSEN,
>Trial Attorney
>United States Department of Justice
>Environment & Natural Resources Division
>Natural Resources Section
>P.O. Box 663
>Washington, D.C. 20044
>202.305.0258
>202.514.8164 (fax)
>
>Attorneys for Defendants