**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **COLORADO WILD HORSE AND BURRO COALITION, INC., *et al.*** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civil Action No. 06-1609 (RMC)** |
| **DIRK KEMPTHORNE, *et al.*,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

In the face of a fully-briefed motion to dismiss filed by the Defendants, sued in their official capacities as federal officers,[1] the Plaintiffs seek jurisdictional discovery. The Defendants seek a Protective Order denying discovery. The Court will deny Plaintiffs' motion for jurisdictional discovery and deny Defendants' motion for a Protective Order as moot.

## I. BACKGROUND

Plaintiffs initially sought a temporary restraining order to prevent the Defendants from gathering and removing certain wild horses from the West Douglas Herd Area and/or the Piceance-East Douglas Herd Management Area in northwestern Colorado. *See* Pls.' Mot. for Temporary Restraining Order [Dkt. #5]. Plaintiffs asserted that Defendants were violating the Wild Free Roaming Horses and Burros Act ("WFHBA"), 16 U.S.C. § 1331 *et seq.* After a hearing on

[1] Dirk Kempthorne is Secretary, United States Department of Interior ("DOI"); Kathleen Clarke is Director, Bureau of Land Management ("BLM"), a constituent agency within the DOI; and Kent E. Walter is Field Manager of the White River Resource Area, BLM, which has authority over the areas in question.

September 29 and October 5, 2006, the Court denied the motion and ordered the parties to confer and advise the Court whether the case would proceed. *See* October 5, 2006 Minute Entry Order. Plaintiffs filed an Amended Complaint on December 6, 2006, seeking a declaratory judgment on the legality of BLM's gather and removal of wild horses from the Piceance-East Douglas Heard Management Area and the West Douglas Herd Area in September and October 2006. *See* Pls.' Am. Compl. [Dkt. #24]. Plaintiffs also sought declaratory judgment on the legality of BLM Instruction Memorandum ("IM") 2002-95, the 1981 Herd Management Area Plan ("1981 HMAP"), and the 1997 Resource Management Plan ("1997 RMP"). *Id.* Finally, Plaintiffs sought declaratory judgment on the legality of a proposed amended Resource Management Plan ("RMP"), currently pending review by BLM, to remove all remaining wild horse herds from the West Douglas Herd Area. *Id.*

On December 29, 2006, the Defendants moved to dismiss the Amended Complaint because:

> (1) the Plaintiffs' claims related to the gather/removals conducted in the Piceance-East Douglas [Herd Management Area] and the West Douglas [Herd Area] are moot; (2) Plaintiffs' claims related to the "Instruction Memorandum," 1981 HMAP, and 1997 RMP, are time-barred under 28 U.S.C. § 2401 and fail to qualify as reviewable "final agency actions" under the Administrative Procedure Act ("APA) [5 U.S.C. §§ 701-706]; and (3) Plaintiffs have no cognizable claim under the APA as to the *proposed* decision to remove all horses from the West Douglas Herd Area.

Defs.' Mot. to Dismiss [Dkt. #27] at 2. Plaintiffs' filed their Opposition on February 2, 2007. *See* Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss [Dkt. # 29]. Defendants' Reply in Support of the Motion to Dismiss was filed on March 16, 2007. *See* Defs.' Reply [Dkt. #35].

Plaintiffs filed a Motion for Leave to Conduct Discovery on Jurisdictional Issues Raised by Defendants' Motion to Dismiss and Relating to Defendants' Position Regarding the Legality of Zeroing Out a Wild Horse Herd Area and an accompanying memorandum in support of its motion ("Pls.' Mem.") on June 25, 2007. *See* Dkt. #36. The Federal Defendants responded with a Motion for Protective Order[2] and memorandum in support of its motion ("Defs.' Mem.") on July 18, 2007. *See* Dkt. #38. Thereafter, Plaintiffs filed an opposition and reply ("Pls.' Reply") on August 6, 2007. *See* Dkt. #44. Finally, Defendants' filed their Reply in Support of Motion for Protective Order ("Defs.' Reply") on August 10, 2007, making the motions ripe for adjudication. *See* Dkt. #45. In the meantime, on July 9, 2007, by minute entry order, the Court denied the Defendants' Motion to Dismiss without prejudice as moot in light of the outstanding issues regarding additional discovery and the possibility that the parties would thereafter revise their previous positions. In addition, the Court ordered that "[i]f, after the discovery issues are fully resolved, Defendants believe their Motion remains accurate and viable, they may move to resuscitate it without re-filing." *See* July 9, 2007 Minute Entry Order.

On October 22, 2007, the Defendants filed a Status Report on the West Douglas Herd Area, notifying the Court that the Colorado State Director of BLM, on October 10, 2007, approved Mr. Walter's proposed decision to remove all wild horses from the West Douglas Herd Area. *See* Defs.' Status Report on West Douglas Herd Area [Dkt. # 47] at 1.

> Before BLM gathers any horses from the herd area, the White River Field Office must prepare a gather plan and related Environmental Assessment ("EA") and issue a final decision, which will be subject to public comment. BLM

[2] Defendants' motion also included their opposition to Plaintiffs' Motion for Jurisdictional Discovery.

> anticipates that the earliest any gathers, if approved, could occur is August 2008.

*Id.* (citations to Second Declaration of Kent Walter omitted).

## II. ANALYSIS

This case is brought under the APA, which generally limits the parties to a review of the administrative record developed by the agency whose final action is being challenged. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-421 (1971). "The focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court." *Environmental Def. Fund v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981). If the record is too scant for a decision to be made, courts will, "except in rare circumstances," remand to the agency for additional investigation or explanation. *Florida Power & Light Co. v. United States Nuclear Regulatory Comm'n*, 470 U.S. 729, 744 (1985); *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996) ("Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions.").

"[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). The plaintiff in such a case must make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *United States v. Philip Morris*, 116 F. Supp. 2d 116, 130 n. 16 (D.D.C. 2000). Discovery is properly denied in connection with a motion to dismiss on jurisdictional grounds when the court

"do[es] 'not see what facts additional discovery could produce that would affect [its] jurisdictional analysis.'" *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (quoting *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994)).

**A. Instruction Memorandum No. 2002-95**

Plaintiffs argue that they need discovery concerning the current status of the 2002 IM. That document, dated February 13, 2002, concerned the "Gather Policy & Selective Removal Criteria for Wild Horses" to achieve appropriate management levels at all herd management areas by fiscal year 2005. Pls.' Reply, Ex. 1 at 1. It was explicitly set to expire on September 30, 2003. *Id.* at 5. The D.C. Circuit has already concluded that "[b]ecause the memo has expired, this claim [challenging the 2002 IM] is moot." *Fund for Animals v. BLM*, 460 F.3d 13, 18 (D.C. Cir. 2006). Plaintiffs insist that the BLM admitted that the IM "continues to serve as guidance" for the Field Offices, *id.* at 19, but that the Circuit looked only to its stated expiration date. Pls.' Reply at 2. Thus they argue that the Circuit "never considered the issue presented here as to the BLM's continued implementation of the IM and its stated targets for the reduction of wild horse herds." *Id.*

Plaintiffs mis-read *Fund for Animals*. Judge Thomas Griffith, in dissent, raised the issue they argue here concerning whether the IM was still effective. *Fund for Animals*, 460 F.3d at 24 (Griffith, J., dissenting). The majority opinion rejected that argument:

> The government's concession that "the general national planning approach set forth in the February 2002 memorandum continues to serve as guidance to the field for the conduct of specific gather and removal decisions," Br. Of Appellees 25 n.6, cannot support the weight the Fund would place on it. . . . Neither can it support our partially dissenting colleague's argument. The government notes that "the record provides no evidence of [the Memorandum's] continued implementation." Br. Of Appellees 25 n.6. The

> absence of record evidence does not create a genuine issue of material fact. This is especially so with respect to questions of mootness. The Fund states in a footnote that "BLM has never claimed that it is no longer implementing the . . . Memorandum." Br. Of Appellants 12 n. 4. This is hardly "evidence" that the expiration date does not mean what it says.

*Id.* at 18-19. This Court must follow suit. The IM expired long before the gathers at issue here. Discovery on it is moot.

**B. Restoration Strategy**

Plaintiffs want to discover more about BLM's Restoration Strategy, "which singled out wild horses as being responsible for watershed damage throughout the West," and from which the IM was allegedly developed. Pls.' Mem. at 2. Plaintiffs believe that BLM improperly refused to consider the impact of livestock grazing because one of their members was informed by a BLM employee who worked on the Strategy in 1999 or 2000 that he had been instructed to ignore the impact of livestock grazing. *Id.* The Circuit has explained that "Courts may 'intervene in the administration of the laws only when, and to the extent that, "final agency action" has an actual or immediately threatened effect.'" *Fund for Animals*, 460 F.3d at 20 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894 (1990)). With respect to the Restoration Strategy, the D.C. Circuit has already explicitly held that it was not final agency action subject to review under the APA. The Circuit explained that "[o]ur conclusion that the Bureau's [Restoration Strategy] is not reviewable under the APA is of a piece with this court's consistent refusal to review agency orders 'that do[] not adversely affect complainant but only affect[] his rights adversely on the contingency of future administrative action." *Id.* at 22. If the Strategy is not subject to APA review, no discovery concerning its antecedents or current effect would add to this APA case and none will be allowed.

**C. Legal Opinions and/or Advice**

In their Opposition to Defendants' Motion to Dismiss, Plaintiffs submitted an email from an agency official within the White River Field Office, the local BLM office with responsibility for the areas in question, referencing a communication from agency counsel for BLM. *See* Pls.' Opp'n Exhibits, Ex. 10 [Dkt. #31]. Plaintiffs state that this email waives the attorney-client privilege and allows them to seek BLM documents and communications related to any legal opinion or advice in regard to the "White River position" referenced in their exhibit. The email in question was authored by Jim Cagney, then Acting Field Manager. It reflected that he had been "thinking about the legal advice we received" from agency counsel and did not believe "that advice leads to any direction." *Id*. at 2. He wrote that "[g]iven the fact that the BLM's lawyer doesn't support White Rivers [sic] position, and I'm just an acting field manager, it seems prudent for me to back off" on planning any gather of wild horses in 2001. *Id.* The crux of the problem was explained:

> In 1975 the term "Herd Area" did not exist. In 1983, the definition of a Herd Area in the national program guidance was "herd areas collectively represent the maximum distribution of horses and burros in a planning area." Through various documents, most notably congressional reports, the West Douglas Area was irreversibly termed a herd area by that benign definition. Then in 1986, the BLM changed the Herd Area definition in the regulations to link it to the Wild Free Roaming Horse and Burro Act by saying "Herd Area means the geographic area identified as having been used by a herd as its habitat in 1971." With all due respect to that latest definition, the horses on Texas Mountain have been in trespass for 28 years. This is not about cows or oil and gas. I think it's time for the national program office to help us with that issue rather than let us twist in the wind.

*Id.* Plaintiffs cite D.C. Circuit precedent on waiver of attorney-client privilege to the effect that a

party cannot "invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981); *see also SEC v. Lavin*, 111 F.3d 933 (D.C. Cir. 1997); *In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982). Plaintiffs contend that the waiver of privilege arising from BLM's release of Mr. Cagney's email extends to all other communications concerning "the subject of the Cagney email, *i.e.*, legal advice and opinions regarding the legality of removals of wild horses under the purview of the White River Office." Pls.' Mem. at 6.

There are two problems with the Plaintiffs' argument. First, the subject matter of Mr. Cagney's email does not sweep nearly as broadly as they interpret it. Mr. Cagney was discussing whether, in view of a lawyer's opposition, he could conclude a gather of wild horses in 2001. Plaintiffs do not reveal how they believe that issue is relevant to establishing jurisdiction in this case, and the Court perceives none. Second, Plaintiffs do not reveal how any otherwise-privileged communications, if released, would aide their jurisdictional claims.[3] They overlook the nature of this APA case, by which review is of the agency record without generalized discovery.

The Court finds no basis to allow jurisdictional discovery into legal opinions and advice from BLM counsel.

## III. CONCLUSION

For the reasons stated, Plaintiffs' Motion for Leave to Conduct Discovery on Jurisdictional Issues [Dkt. #36] will be denied. Thus, Defendants' Motion for Protective Order [Dkt. #38] will be denied as moot. Defendants will be ordered to notify the Court within 14 days if they

---

[3] BLM does not concede that it has waived the attorney-client privilege "with respect to communications about removal of wild horses from the White River Resource Area." *See* Defs.' Reply at 4 n.2.

wish to resuscitate their Motion to Dismiss [Dkt. #27], which is fully briefed. A memorializing order accompanies this Memorandum Opinion.

_______________/s/___________________
ROSEMARY M. COLLYER
United States District Judge

DATE: November 30, 2007