**EXHIBIT THREE**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO WILD HORSE AND ) | |
| BURRO COALTION, INC., et al., ) | |
| ) | Civ. No. 06-1609 RMC |
| Plaintiffs, ) | |
| ) | |
| ) | |
| v. ) | |
| ) | |
| DIRK KEMPTHORNE, et al., ) | |
| ) | |
| Defendants. ) | |

DECLARATION OF SARAH E. WISELY

I, Sarah E. Wisely, declare as follows:

1. I am the Colorado State Director of the Bureau of Land Management (BLM), an agency of the U.S. Department of the Interior (DOI), located in Lakewood, Colorado. In my capacity as State Director, I am responsible to the Secretary of the Interior for the administration of the Wild Free-Roaming Horses and Burros Act (16 USCS §§ 1331 et seq.), including recommendations as to whether wild horses should be removed from herd areas.

2. I am aware of the above-captioned lawsuit, in which the plaintiffs have challenged the total removal of wild horses from the West Douglas Herd Area located southwest of Rangely, Colorado.

3. As head of the Colorado State Office (CSO), I have authority to determine whether the deliberative process privilege should be invoked in this case. The purpose of this Declaration is to explain why certain documents prepared by BLM and the Department of the Interior's Office of the Solicitor (SOL) in the course of the deliberations regarding management of the West Douglas wild horse herd are subject to the deliberative process privilege, and/or to articulate the harm which would be caused to BLM if the documents were included in their entirety in this record. I have reviewed all of the documents for which the deliberative privilege is asserted to confirm whether there would be harm to BLM if they were released. This Declaration is based in part on my

        personal knowledge, and in part on knowledge and information from subordinates.

4. The BLM is filing herewith an Index to the Administrative Record in this matter. The Index includes approximately 216 documents which date from the early 1970s through 2007, reflecting a decision that was the subject of vigorous internal debate and public review pursuant to the National Environmental Policy Act (NEPA) process. The documents fill 4 Binders, and include over 1500 pages. The 39 deliberative process and 17 attorney-client privileged documents withheld constitute less than 26% of the record.

5. The Index references 17 documents that have been either partially or completely withheld on the basis of the attorney-client privilege. These documents contain confidential communications between BLM personnel authorized to consider options for management of the West Douglas Herd Area wild horses and BLM's agency attorneys at the SOL and trial attorneys at the U.S. Department of Justice (DOJ) relating to legal matters for which BLM sought advice. The documents, or portions thereof, are therefore covered by the attorney-client privilege and are also unavailable to the public under Exemption 5 of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5). None of these documents has been released to the public and they have been maintained as confidential documents within BLM, SOL, and DOJ.

6. 39 documents were either partially or completely withheld on the basis of the deliberative process privilege. All of these documents are pre-decisional and contain opinions and/or recommendations regarding policy matters. The documents are, therefore, covered by the deliberative process privilege and would be unavailable to the public under Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). None of these documents has been released to the public and they have been maintained as confidential documents within BLM, SOL, and DOJ.

7. In asserting the deliberative process privilege, BLM has narrowly limited its claim of privilege to those documents that are pre-decisional and deliberative, the release of which would harm the important government interest in the quality of administrative decision-making. All of these documents involve primarily deliberative discussions rather than factual matters. As described more specifically below, the documents withheld under the deliberative process privilege involve candid discussions among BLM personnel at the White River Field Office (WRFO), Colorado State Office (CSO), and Washington Office (WO) levels in the context of choosing among various options for managing the West Douglas herd. These documents are an essential part of the deliberative process in that the authors of the documents make recommendations or express opinions on legal or policy matters. They include candid internal discussions relating to options for managing the West Douglas horses and deliberations regarding the preparation of NEPA documents. They include recommendations from staff members and lower

level managers to individuals with decision-making authority. Documents containing the agency's final decision and documents related to implementation of that decision were not withheld. Only those documents containing recommendations or related policy-making discussions (or which relay the issues under deliberation to other employees) have been withheld.

8. Almost all of the documents withheld as subject to the deliberative process privilege are internal e-mail messages. The use of e-mail as a communication tool within BLM has proved to be beneficial because wild horse management involves staff and managers located in many separate geographic locations. If the candid views of staff contained in these e-mails were required to be disclosed in the Administrative Record, the quality of future internal deliberations on resource issues would suffer. In my view, staff would hesitate to give their complete, honest recommendations on issues via email based on fears that these candid recommendations would be provided to the public and to other government agencies with whom they deal on a frequent basis. Relying entirely on verbal advice would lead to a lack of coordination and potential confusion, impairing BLM's ability to carefully and thoroughly develop positions on important policy matters. I have personally reviewed these documents and I believe that this material, if disclosed, would significantly and adversely impair the integrity and quality of the decision making process for future BLM resource decisions.

9. In determining which documents were potentially subject to the deliberative process privilege, my staff and I applied the following principles: (1) the privilege protects from disclosure only those documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions are made or policies are formulated; (2) withheld material must be opinion, deliberation, advice, recommendation, or evaluation by those responsible for advising on the advantages and disadvantages of proposed agency decision or policy; (3) withheld material must be directed toward formulation of a policy or decision being debated within the agency at the time; (4) withheld material must be pre-decisional, must contain advice or recommendations, and must not merely comment upon already established policy; and (5) reasonably segregated, non-privileged factual material must be released. To the extent that any factual or non-privileged material is being withheld, I believe that it is so intertwined with privileged information that the factual information cannot be released without releasing privileged information as well. To the best of my knowledge, such factual information generally is available from other documents in the administrative record.

10. I have personally reviewed the documents that the agency is withholding under the deliberative process privilege. I have determined that, to the best of my knowledge, the documents indentified in the Defendants' Privilege Log under the heading of Deliberative Process Privilege should be protected from production by this privilege. By this declaration, therefore, I formally claim

3

      the deliberative process privilege for all documents so identified in defendant's Privilege Log.

11. The basis for the invocation of the deliberative process privilege is set forth below:

Privilege Log – Deliberative Process Privilege

The basis for the invocation of the deliberative process privilege with respect to each document is set forth below. The numbered paragraphs DP1 through DP39 below correspond to the document of the same number on the Deliberative Process portion of the Privilege Log.

    DP1. Email from Bob Schmidt, Colorado State Office (CSO) Branch Chief for Renewable Resources, to the WRFO Field Manager, dated March 14, 2003. Schmidt offers a candid analysis of the draft 2004 EA, asks various questions about management options for the West Douglas herd, and poses recommendations about how to address and analyze issues raised by the draft EA. This document contains opinions regarding legal and policy issues involved in making the decision. The memo was pre-decisional, and release of this document would discourage the open exchange of opinions and adversely impair the quality of the decision making process.

    DP2. Undated WRFO response to comments made by Bob Schmidt in March 14, 2003, email; author unknown. WRFO responds to questions raised by Schmidt and his recommendations on how to address legal and policy issues. This document was pre-decisional and part of a candid exchange of the views of various BLM offices during a decision process marked by open debate and freely expressed opinions. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision making process.

    DP3. Email from CSO Wild Horse and Burro Program (WHB CSO) Leader Fran Ackley to various staff members of WRFO and CSO, dated March 10, 2004. This email critiques the 2004 EA and offers Mr. Ackley's candid opinion of legal and policy issues raised by the 2004 EA, and presents his recommendations regarding issues to be considered in determining management options for the West Douglas herd. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

    DP4. Attachment to Email (DP3) from WHB CSO Program Leader Fran Ackley to various WRFO and CSO staff members, with Ackley's handwritten notes, dated March 10, 2004. Ackley critiques the 2004 EA and offers his candid opinion of legal and policy issues raised by

4

the 2004 EA, and presents his recommendations regarding issues to be considered in determining management options for the West Douglas herd. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP5.  Memo from unnamed author (probably Bob Schmidt, BLM CSO Branch Chief for Renewable Resources), in response to a March 9, 2004, WRFO request for comments on a draft of the 2004 Finding of No Significant Impact (FONSI). Schmidt critiques the 2004 EA, poses a series of questions for the Field Office to consider in determining management options for the West Douglas herd, and offers candid opinions regarding legal and policy issues to consider in making the decision. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP6.  Email from WHB CSO Program Leader Fran Ackley to WRFO and CSO, dated June 9, 2004. Ackley offers a candid analysis of legal and policy issues raised by the 2004 EA, and asks a series of questions for management to consider in making decisions regarding management of the West Douglas horses. The email is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP7.  Email from Bob Fowler, WRFO to staff members of CSO, dated June 23, 2004, and forwarded by Tom Forre, CSO to CSO and WHB CSO staff. Fowler describes changes he made in the draft of the 2004 EA FONSI in response to comments received from BLM staff. The email is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP8.  Email from WHB CSO Program Leader Fran Ackley to the WRFO Field Office Manager, dated June 24, 2004. The email was a follow-up on comments Ackley submitted on June 9, 2004 (DP6). Ackley critiques the 2004 EA and proposes a series of questions to the Field Manager regarding issues to be considered in determining management options for the West Douglas herd. The email is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP9.  Memo from Valerie Dobrich, WRFO, response to comments on 2004 EA with handwritten notes by Fran Ackley, (WHB CSO) date unknown. This memo critiques the 2004 EA, and offers Dobrich's candid opinion of legal and policy issues raised by the 2004 EA, and presents her recommendations regarding issues to be considered in determining management options for the West Douglas herd. Ackley's handwritten notes comment on issues raised by Dobrich and include questions requiring review and follow-up. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP10. Email from Bob Schmidt, CSO, to a CSO Manager, and to WHB CSO Program Leader Fran Ackley, dated July 8, 2004. Schmidt recommended that the manager consider certain information before making a decision regarding the West Douglas Herd Area, and offers candid opinions regarding legal and policy issues to be considered while making the decision. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP11. Email from Tamara Sadoo to WHB CSO Program Leader Fran Ackley dated September 23, 2004, with handwritten notes by Ackley. Sadoo summarizes for Ackley a CSO manager's request for an analysis of the 2004 EA. Sadoo offers frank opinions regarding the request, poses a series of questions for Ackley to answer, and suggests a way to structure the response to ensure that the manager receives a thorough analysis. The Sadoo memo preceded the agency's decision to withdraw the 2004 EA. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP12. Memo prepared by WHB CSO Program leader Fran Ackley dated September 27, 2004, critiquing the 2004 EA. The memo is a frank discussion of issues raised by the 2004 EA and expresses Ackley's evaluation of legal and policy issues to be considered prior to the issuance of a final decision on the West Douglas herd. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP13. Memo prepared by CSO staff member Tamara Sadoo on September 29, 2004, for review by the WRFO Field Manager; this document was also distributed as an email to WRFO and CSO staff. The memo is a frank

      critique of the 2004 EA which poses a series of questions regarding issues that Sadoo believed required further analysis and clarification prior to the agency issuing a final decision on the West Douglas horses. The Sadoo memo, which contained extensive evaluation of the legal and policy issues raised by the 2004 EA, generated much discussion within the WRFO and CSO. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP14. Memo by Jay Thompson, CSO, dated October 25, 2004, and sent to staff and managers of the WRFO and CSO. In response to Tamara Sadoo's September 29, 2004, memo regarding the 2004 EA, (DP13) Thompson prepared extensive comments which addressed issues and questions raised by Sadoo. This memo involves BLM employees commenting, critiquing and resolving issues raised by the 2004 EA which were carried over to the 2005 EA. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP15. Email dated October 29, 2004, from CSO Biologist Tom Forre to CSO and WRFO staff. Forre presents his opinion of range conditions during a field tour of the herd area. Two sentences of the document were redacted, as they contain Forre's recommendations regarding the formulation of the Preferred Alternative for the draft 2005 EA. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of the redacted portion of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP16. Attached to the October 29, 2004, (DP15) email is a memo prepared by Tom Forre (CSO) dated October 28, 2004. In response to Tamara Sadoo's September 29, 2004, memo regarding the 2004 EA, (DP13) Forre prepared extensive comments which addressed issues and questions raised by Sadoo. This email involves BLM employees commenting, critiquing and resolving issues raised by the 2004 EA which were carried over to the 2005 EA. The email is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP17. Memo by unknown author, date unknown containing comments on the 2004 EA which responds to issues and questions raised in the September 29, 2004, Sadoo memo (DP13). The memo is pre-decisional and contains

opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP18.  Email dated November 22, 2004, from Fran Ackley (WHB CSO) to managers and staff of the CSO regarding a proposed new alternative being considered for the draft 2005 EA. CSO managers had requested input regarding the draft 2005 EA, and Ackley's email constitutes a frank discussion of the legal and policy implications of the agency choosing to either write a new EA or modifying the existing decision. The email also contains Ackley's recommended wording for the proposed new alternative. The memo is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP19.  Draft notes taken by unidentified facilitator of a meeting held on November 24, 2004, between the staff of the CSO and WRFO regarding the amendment planning process for the West Douglas Herd Area. The meeting notes summarize concerns of CSO and recommended changes to be made in the 2004 EA in order to satisfy CSO concerns regarding WRFO's approach to the amendment. The redacted portion is a footnote describing the policy interests considered in making the decision to withdraw the EA. The redacted portion of this document is pre-decisional and reflects internal deliberations on a policy decision that was subject to debate; release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP20.  Meeting notes by unknown author dated December 1, 2004. Meeting attendees included managers and staff of CSO and WRFO to discuss withdrawal of the 2004 EA and how to approach preparation of the 2005 EA. This document summarizes internal debate regarding the process BLM would use in preparing the new EA, recommendations regarding which issues needed to be addressed and how to address them, and questions for further review. This document is pre-decisional and reflects internal deliberations on a policy decision that was subject to debate; release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP21.  This undated excerpt from the West Douglas Herd Area Amendment to the White River RMP Environmental Assessment (CO-WRFO-03-050-EA) was an internal draft version of the 2005 EA with comments by "vmd" "mrs" and "Bob", as well as handwritten notes by an unnamed author. The document includes both written narrative and a chart comparing draft alternatives which are heavily notated with various typed and handwritten comments and questions. This draft contains extensive

8

        changes, recommendations and substantive edits reflecting BLM's internal deliberations regarding how BLM would structure and present information in the 2005 EA. This document is pre-decisional and reflects internal deliberations on a policy decision that was subject to debate; release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP22. Email from Dean Bolstad, Wild Horses and Burros National Program Office (WHB NPO) to staff of the WO, CSO and WHB CSO transmitting comments on the draft responses to protest of the 2005 EA, dated February 14, 2006. Bolstad addresses legal and policy issues raised by the protests and offers specific recommendations to resolve them. The email is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP23. Draft Protest Responses to protest filed by Plaintiffs, (by Valerie Stanley on behalf of Toni Moore, Colorado Wild Horse and Burro Coalition; Barb Flores, American Mustang and Burro Association; and Ginger Kathrens, the Cloud Foundation) with highlighted comments, undated attachment to Bolstad's February 14, 2006, email (DP22). The document contains Bolstad's opinions regarding legal and policy issues raised by the protests and offers specific recommendations to resolve those issues. The document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP24. Draft Protest Responses to protest filed by the Humane Society of the United States (HSUS) with highlighted comments, undated attachment to Bolstad's February 14, 2006, email (DP22). The document contains Bolstad's opinions regarding legal and policy issues raised by the protests and offers specific recommendations to resolve those issues. The document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP25. Draft Protest Responses to protest filed by the Animal Welfare Institute (AWI) with highlighted comments, undated attachment to Bolstad's February 14, 2006, email (DP22). The document contains Bolstad's opinions regarding legal and policy issues raised by the protests and offers specific recommendations to resolve those issues. The document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP26. Draft Protest Responses to protest filed by Daryanne Anna Jessler with highlighted comments, undated attachment to Bolstad's February 14, 2006, email (DP22). The document contains Bolstad's opinions regarding legal and policy issues raised by the protests and offers specific recommendations to resolve those issues. This document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP27. Draft Protest Responses to protest filed by the Animal Welfare Institute (AWI) with recommended responses prepared by Fran Ackley, WHB CSO, dated March 10, 2006. AWI filed a protest of the 2005 EA; BLM prepared draft responses to each point raised by each protestor and requested comments from WRFO and CSO, including Ackley. Most of this document is included in the record, but a sentence at the bottom of page 16, Ackley's single-sentence comment regarding Response 18, (at page 17) and Ackley's comments regarding Issue 19 have been redacted. The redacted portion of Ackley's comments on the draft responses contains Ackley's opinion regarding how agency officials should respond to issues raised in the protests. The redacted portions of this document are pre-decisional and contain opinions on a policy decision that was subject to debate. Release of the redacted portions of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP28. Draft Protest Responses to protest filed by the Animal Welfare Institute (AWI) with recommended responses prepared by Fran Ackley, WHB CSO, unknown date. Ackley prepared a second set of comments on the draft responses to the AWI protest. Most of this document is included in the record, but Ackley's comments regarding Response 9 (three paragraphs) have been redacted. The redacted portion of Ackley's comments on the draft responses constitute Ackley's opinion regarding how agency officials should respond to issues raised in the protests. The redacted portions of this document are pre-decisional and contain opinions on a policy decision that was subject to debate. Release of the redacted portions of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP29. Email between Don Glenn, WHB NPO, and Fran Ackley, WHB CSO, dated April 12, 2006. In this exchange, Ackley summarizes decisions made during a conference call held to discuss options for management of the West Douglas herd while the protests were under review, and requests Glenn's guidance regarding a legal and policy issue raised by the discussion. The exchange includes Glenn's response. The document is pre-decisional and contains opinions on a policy decision that was subject

        to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP30.  Memo from unknown author in WO to Fran Ackley, WHB CSO, undated. The author provides recommendations regarding responses to protests of the 2005 EA. The comments on the draft responses constitute recommendations as to how agency officials could respond to various issues raised in the protests. The document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP31.  Memo by unknown author, dated May 17, 2006. The memo is a briefing paper which provided background information to the BLM Colorado State Director regarding management of the West Douglas Herd Area. The memo is primarily factual, but two paragraphs, regarding potential responses to legal and policy issues raised by the protests, were redacted. The redacted portions contain the author's opinions and recommendations regarding a policy decision that was the subject of debate within the agency. This memo was pre-decisional, and release of the redacted portion of this document would discourage the open exchange of opinions and adversely impact the decision making process.

DP32.  Email to Glenn Wallace and other CSO and WO staff from Don Glenn, (WHB NPO) dated June 2, 2006. The email is Glenn's response to a specific issue raised in the protests to the 2005 EA. Glenn's comments on the draft responses constitute his recommendations as to how agency officials should respond to various issues raised in the protests. The document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP33.  Email exchange, dated August 16-17, 2006, between Don Glenn (WHB NPO), Glenn Wallace, (CSO) and Fran Ackley, (WHB CSO). Most of this email is included in the record, but a single sentence discussing a legal issue regarding the protests raised by a SOL RMR attorney has been redacted. The redacted portion of the document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of the redacted portion of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP34.  This memo, author unknown, is dated October 16, 2006. The memo is a

candid discussion of management options regarding West Douglas Herd Area. This document contains opinions and recommendations regarding legal and policy issues to consider in making a final decision regarding management of the West Douglas horses. The document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

DP35.  This memo, author unknown, is dated October 17, 2006. The memo is a chronology of West Douglas Herd Area Decisions and addresses legal and policy issues regarding management of the West Douglas horses. This document contains opinions regarding how previous decisions would affect the agency's approach to the proposed decision regarding the West Douglas horses. Most of this document is included in the record, but five sentences from a paragraph on the first page of the document have been redacted. The redacted portion is a staff member's opinion of legal issues regarding management of the West Douglas herd that was the subject of debate within the agency. The redacted portion of the document is pre-decisional, and release of the redacted portion would discourage the open exchange of ideas and adversely impair the decision-making process.

DP36.  This email dated October 18, 2006, was sent by Glenn Wallace, (CSO) to WO staff (WO). The email describes a CSO briefing of the Colorado State Director. Wallace provides a candid assessment of the State Director's legal and policy concerns as the agency addressed protests to the 2005 EA. This email was a pre-decisional internal discussion of issues under review by the State Director and not intended for release to the general public. The document is pre-decisional, and release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision making process.

DP37.  This email, dated March 1, 2007, was sent by Glenn Wallace, CSO, to WRFO and WHB CSO. The email discusses a request by a CSO manager to prepare a litigation report, and requests assistance with information needed for the report. This document contains Wallace's opinions regarding legal and policy issues regarding the West Douglas herd. The document is pre-decisional, and release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision making process.

DP38.  This email from Colin Voigt, BLM WO, to various WO staff is dated April 25, 2007. This email discusses Voight's candid criticisms of the 2005 EA, including his concerns regarding legal and policy issues raised by the EA, and recommendations as to how to correct the EA to resolve his concerns. The email includes an attached chart which summarizes Voight's comments. The document is pre-decisional, and release of this

12

      document would discourage the open exchange of ideas and adversely impair the quality of the decision making process.

DP39. This email exchange occurred between May 9, 2007, and May 16, 2007, between Glenn Wallace, CSO, and Bob Fowler, Grand Junction Field Office (GJFO). Most of the email is included in the record, but the paragraph in the May 16, 2007, email from Wallace to Fowler has been redacted. The redacted portion describes a position taken by SOLRMR and SOLDC on a legal issue and refers to confidential communications relating to a legal matter for which the client has sought legal advice. The redacted portion of the email was pre-decisional, and release of the redacted portion of this document would discourage the open exchange of opinions and adversely impair the quality of the decision making process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Lakewood, Colorado on this 14th day of April, 2008.

*Sarah E. Wisely*
Sarah E. Wisely
Colorado State Director, U.S. Bureau of Land Management

13