UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO WILD HORSE AND BURRO COALITION, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> DIRK KEMPTHORNE, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civ. No. 06-1609 RMC |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND TO REQUIRE DEFENDANTS TO INCLUDE IN THE ADMINISTRATIVE RECORD CERTAIN INFORMATION NOTED AS WITHHELD IN DEFENDANTS' PRIVILEGE LOG**

I.  **Introduction**

Defendants' filed Administrative Record ("AR") purports to contain the information that was before Defendant Bureau of Land Management ("BLM") when it issued its Final Decision Record for the 2005 Environmental Assessment ("EA") and denial of Plaintiffs' and others' protests to the 2005 Amendment to the 1997 White River Resource Area ("WRRA") Resource Management Plan ("White River RMP").  As a matter of law, the AR must include all documents that were before the BLM at the time it made its decision.  Envtl. Defense Fund v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981). However, as explained below, the AR, as filed, is devoid of three broad categories of documents that should be part of the AR.

The 2005 Amendment to the White River RMP ("2005 Amendment") sustained a 1997 decision by BLM to remove all wild horses from the West Douglas Herd Area

("WDHA"). The 1997 White River RMP's discussion of wild horses in the WDHA contained the single conclusory sentence that wild horses would be completely removed in 2007. Although, when BLM began its review and amendment process in 2002, BLM purported to reconsider whether it would manage any wild horses in the WDHA, the agency ultimately reached the same conclusion it had already arrived at in 1997, i.e. that it would *not* manage wild horses in this herd area. Although the BLM's 2005 decision contains a host of additional rationales for the agency's acceptance of the 1997 determination to eliminate wild horses from the WDHA, what was before the agency when it made its initial decision in 1997 remains extremely relevant to its 2005 decision. Yet, the AR is almost completely devoid of any of the materials which supported the 1997 decision; these should properly be made part of the record before this Court.[1]

Furthermore, because one of the central issues – if not the central issue – this Court must consider is whether BLM may lawfully "zero out" wild horses from an area they occupied in 1971 at the passage of the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. § 1331, et seq., documentation concerning the areas the horses did occupy at that time are material. The filed AR is also devoid of this second category of materials. Plaintiffs move this Court to require BLM to include all materials bearing on this question.

BLM has also taken interim steps toward eliminating wild horses from the WDHA since 1997. It has conducted roundups in 1998, 2001 and 2006 and, for each

---

[1] For example, the AR purports to include only those pages of the 1997 White River RMP and an earlier RMP that address wild horse management. See, e.g., AR, Vol. 4, Tabs 5 and 6. As explained in Section II, infra, BLM is to allocate forage not only for wild horses, but for livestock and wildlife. Therefore, materials relevant to these allocations were clearly before BLM when it issued the 1997 White River RMP and should be included in this AR.

2

roundup, BLM has prepared and issued an Environmental Assessment ("EA"). These EAs are relevant to and demonstrate BLM's rationale for removing wild horses from the WDHA. In its April 28, 2005 EA for the WDHA Amendment to the White River RMP (CO-WRFO-05—83 EA), Volume 1, Tab 73, pages 486-555, BLM refers to these interim roundups as being in furtherance of its 1997 White River RMP. Furthermore, these materials were clearly before the agency at the time it made its decision to deny Plaintiffs' protests in 2007. None of these EAs or Decision Records for the roundups has been included in the filed AR.

Plaintiffs hereby move this Honorable Court to order Defendants to supplement the AR with documents, as described and set forth below, so that this Court has before it the full record before BLM at the time it made its decision. Puerto Rico Higher Educ. Assistance Corp. v. Riley, 10 F.3d 847, 850 (D.C. Cir. 1993).

II. **The Administrative Record Must be Supplemented with Pertinent Materials Defendants Have Omitted**

    A. Information Pertinent to BLM's 1997 White River RMP and its Revision in 2005

        1. Documents Relevant to BLM's Decision to Initiate an Amendment to the White River RMP

The AR omits two critical documents explaining that a local BLM official began the process that culminated in the 2005 Amendment to the White River RMP in an effort to shore up BLM's 1997 decision regarding the future of wild horses in the WDHA. The document is BLM Field Manager James A. Cagney's July 18, 2001 letter to Senator Allard thanking him for his note regarding "wild horses and Davie Robertson's concerns," noting that "it is easy to see the issue from Davie's perspective," and stating that Cagney "had decided to initiate a land use plan amendment." Although this letter is

3

highly relevant to BLM's decision (and despite the fact that Plaintiffs attached a copy of the letter to their protest to the October 2005 Amendment), this document was not included in the AR.  Senator Allard's letter to James Cagney is also absent from the AR.

    2.   Plaintiffs' Protests and Exhibits Attached Thereto

Other exhibits submitted by Plaintiffs in support of their protest are also missing from the AR, as well as three pages of Plaintiffs' protest itself.[2]  Although these exhibits were submitted with Plaintiffs' protest and are referenced in Plaintiffs' protest at Volume 1, Tab 46, pages 273-82, they are not included in the filed AR.[3]  These documents were clearly before the agency when it issued its decision denying Plaintiffs' protests to the 2005 Amendment and they should be included in this AR.

    3.   Documents Concerning Livestock Permittee Use of the WDHA

The AR contains various references to the competition for and allocation of forage between livestock and wild horses within the WDHA.  In fact, in its April 28, 2005 EA for the WDHA Amendment to the White River RMP (CO-WRFO-05—83 EA), Volume 1, Tab 73, at 494, BLM states that,

> The forage allocation within the planning area for wild horses will be derived from the livestock Permitted Use. Permitted Use is the forage allocated by an applicable land use plan for livestock grazing in an allotment under a permit or lease and is expressed in Animal Unit Months (AUMs).

The allocation of forage between livestock and wild horses is a central theme in the WRRA's consideration of whether it will manage for wild horses in the WDHA.

---

[2] Pages 10, 11 and 12 of Plaintiffs' Protest are missing from the AR.  Page 9 is Bates Numbered Page 281 and Page 13 is Bates Numbered Page 282. Plaintiffs expect that this omission, along with the omission of the exhibits, was inadvertent.

[3] Plaintiffs surmise that exhibits to other protesters' submissions were also omitted from the AR.  Plaintiffs seek to have these exhibits added to the AR as well.

4

Despite this, the AR does not contain any documents detailing livestock permitted use, the Allotment Management Plan for the livestock permittee whose allotment coincides with the WDHA or other documents explaining how forage was allocated, increased or decreased among livestock, wild horses and other wildlife. The Cagney-Allard letters, which Plaintiffs submit should be added to the AR, demonstrate that documents regarding forage allocation are pertinent to BLM's decision at issue. Because they were before the agency when it made its challenged decision, they should be included in the AR.

> **B. Information Pertinent to BLM's Censusing of Wild Horses after Passage of the Wild Free-Roaming Horses and Burros Act**

In its April 28, 2005 EA for the WDHA Amendment to the White River RMP (CO-WRFO-05—83 EA), Volume 1, Tab 73, at 499, BLM states under "Wild Horse Herd Distribution," that,

> The initial aerial census recorded 9 wild horses in the area now recognized as the West Douglas Herd Area (refer to map 1.4b page 3, for the 1974 aerial census map). These animals were located in the central eastern portion of the West Douglas Herd Area. <u>Additional horses were identified in the Cottonwood Creek and Texas Mountain vicinities</u> by the local public during scoping meetings held during the planning stages of the 1975 Management Framework Plan. (emphasis added).

The AR does not contain these noted additional sources of information concerning the areas wild horses occupied during the passage of the WFHBA. Plaintiffs move this Honorable Court to have BLM supplement this record with all historical data, including historical maps, of the areas within the WDHA that wild horses occupied at the passage of the Act.

5

### C. BLM's Issued EAs and Decision Records for Interim Roundups Made in Furtherance of the 1997 White River RMP

BLM conducted roundups of wild horses from the WDHA in 1998, 2001 and 2006.[4] Prior to each removal of wild horses, BLM issued an EA and received public comments thereon. All roundups were noted to be in furtherance of the 1997 White River RMP. The 2006 roundup was also noted to be undertaken pursuant to the 1997 White River RMP, because the 2005 Amendment had not yet been finalized at the time of the roundup. None of these EAs are contained within this AR, even though they are clearly part of the history of the 1997 White River RMP and the 2005 Amendment to that RMP. Plaintiffs, therefore, move this Honorable Court to require BLM to supplement this AR with these documents.[5]

## III. Defendants' Privilege Log is Inadequate

Defendants have withheld nearly forty documents pursuant to the deliberative process privilege. Appendix 1, CO-WRFO-05-083-EA, AR Document Index. It appears, however, that many of the documents listed may not be privileged and should be made available to Plaintiffs and to this Court as part of the AR.

To assert the deliberative process privilege, an agency must demonstrate that the document at issue is both pre-decisional and deliberative. Animal Legal Defense Fund v. Dep't of the Air Force, 44 F. Supp. 2d 295, 299 (D.D.C. 1999). Furthermore, any pre-decisional documents may not be withheld if they memorialize the policy that BLM

---

[4] BLM planned to conduct another roundup of wild horses from the WDHA in 2000 and issued an EA for that roundup. It then cancelled the roundup, citing budgetary constraints.

[5] Plaintiffs understand that the comments to each of those EAs may be voluminous. Plaintiffs are willing to work with Defendants to ensure that only a representative sample of those comments be added to this AR if the Court determines that the EAs should be added.

6

ultimately adopted in regard to the WDHA and the 2005 Amendment to the White River RMP.  See Eugene Burger Mgmt. Corp. v. HUD, 192 F.R.D. 1, 5 (D.D.C. 1999) ("Whatever its genesis, the document may lose its status because it memorializes or evidences the policy the agency ultimately adopts on an issue or because the agency used the document in its dealings with the public," citing Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (D.C. Cir. 1980)).

       The burden is on the agency to establish the right to withhold information as privileged.  Safari Club Int'l v. Babbitt, No. 91-2523, 1994 U.S. Dist. LEXIS 18183, at * 29 (D.D.C. Dec. 15, 1994).  Defendants have failed to meet this burden.  For example, several documents have been withheld on the grounds that they concern policy issues.  Another withheld document purports to describe changes made to a draft EA FONSI; on its face, that description is insufficient to assert the deliberative process privilege.  Yet another is an email "recommending consideration of certain information prior to making a decision regarding the West Douglas herd," information that would appear to be, at least in part, factual rather than deliberative in nature.

       Because privileges asserted under the Administrative Procedures Act ("APA") are considered to be "coextensive with Exemption 5 of the Freedom of Information Act" ("FOIA"), Defendants must provide the same detail in its description of any purportedly privileged documents as it would in response to a FOIA request.  See Int'l Longshoremen's Assoc., AFL-CIO v. Nat'l Mediation Bd., No. 04-824, 2006 U.S. Dist. LEXIS 4080, at *13 (D.D.C. Jan. 25, 2006) ("[T]o properly defend against a challenge to the exclusion of information from an administrative record, a defendant should necessarily provide the same information it would submit when defending against a

challenge for withholding such information in a Freedom of Information Act action."). Defendants "'must describe not only the contents of the document but also enough about its context, *viz.* the agency's decision making process, to establish that it is a pre-decisional part thereof.'" Hornbeck Offshore Transp., LLC v. United States Coast Guard, No. 04-1724, 2006 U.S. Dist. LEXIS 14389, at *58 (quoting SafeCard Servs. v. SEC, 926 F.2d 1197, 1204 (D.C. Cir. 1991)). Defendants' Deliberative Process Privilege Log falls woefully short of this standard.

Therefore, in order to meet its burden, and to provide this Court with sufficient information upon which to determine if any or all of these documents are, in fact, subject to the deliberative process privilege, either in whole or in part, this Court should require Defendants to either submit a sufficiently explanatory Deliberative Process Privilege Log or produce the documents themselves for review.

For the foregoing reasons, Plaintiffs respectfully request that the Administrative Record be supplemented with the documents described above and, further, that Defendants be ordered to submit a revised Deliberative Process Privilege Log or submit the documents listed therein for review.

Respectfully submitted,

*/s/ Valerie J. Stanley*
Valerie J. Stanley
D. C. Bar No. 384882
329 Prince George Street
Laurel, MD 20707
(301) 549-3126
(301) 549-3228 fax

8

>   */s/ Mara L. Hurwitt*
>   Mara L. Hurwitt
>   D.C. Bar No. 482409
>   Dewey & LeBoeuf LLP
>   1101 New York Ave. N.W.
>   Suite 1100
>   Washington, D.C. 20005-4213
>   (202) 346-8094
>   (202) 956-3280 fax
>
>   Counsel for Plaintiffs

Dated: May 16, 2008