UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COLORADO WILD HORSE** ) | |
| **AND BURRO COALITION, INC.** ) | |
| <u>et al.</u>, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-1609 (RMC) |
| ) | |
| **DIRK KEMPTHORNE,** ) | |
| <u>et al.</u>, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**PLAINTIFFS' REPLY TO FEDERAL DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiffs hereby submit their reply to Defendants' Opposition to Plaintiffs' Motion to Supplement the Administrative Record ("Def. Opp."). Defendants have agreed to produce some of the documents requested by Plaintiffs. However, a number of the documents that Defendants have elected not to produce are properly part of the complete Administrative Record ("AR" or the "Record") relevant to this suit and should be produced to supplement the AR, as discussed below.

<u>Public Comments on the Environmental Assessments</u>

In July, 1997, the Bureau of Land Management ("BLM") issued its Resource Management Plan ("RMP") for the White River Resource Area ("WRRA") (the "1997 RMP"). In that 400+ page document, BLM devoted less than a full page to wild horses. BLM stated that it planned to manage for a population of zero (0) to fifty (50) horses in the West Douglas Herd Area ("WDHA") for 0 to 10 years, and the long-term plan was to totally remove all wild horses from the area thereafter.

In furtherance of that plan, BLM issued draft Environmental Assessments ("EAs") for its planned roundups and removal of wild horses and conducted interim roundups of wild horses from the WDHA in 1998, 2000, and 2001. BLM solicited public comments on these roundups; the overwhelming majority of those comments were opposed to the roundups and eventual elimination of the herd. BLM considered those comments before issuing final EAs and Findings of No Significant Impact ("FONSI") for each of those roundups. Defendants have agreed to supplement the Record with Draft EAs for the interim roundups of wild horses in the WDHA. Def. Opp. at 6. However, Defendants have refused to produce the public comments submitted to BLM on the sole ground that to do so "would be unnecessarily burdensome." Def. Opp. at 7.

The comments opposing BLM's actions were "before the agency" at the time it made its decisions to further implement its 1997 RMP and to further its stated goal of zeroing out that herd, and are therefore appropriately part of the record. These comments concern not only the individual roundups, but BLM's step-by-step, roundup-by-roundup, implementation of the 1997 RMP decision to eradicate the entire West Douglas herd. As such, they are properly a part of the AR and should be produced. BLM's claim of burden is transparent and should be rejected. The agency has just burdened itself by producing four oversized binders of material as supposed support for its actions in eliminating wild horses; it cannot legitimately claim any real burden in producing the relatively small sets of public comments that urged BLM not to eliminate the West Douglas wild horses.

<u>Documents Concerning Livestock Grazing Permits in the WDHA</u>

Plaintiffs have requested that Defendants supplement the AR with documents concerning the allocation of forage between wild horses and livestock in the WDHA

because this competition for forage has played a central theme in BLM's consideration of whether it would manage for wild horses in the WDHA. Defendants have agreed to produce the Twin Buttes Allotment Management Plan ("AMP") which shows allocation of forage for livestock in the WDHA and the related 1999 EA for this AMP. Def. Opp. at 5-6.

These documents, while relevant, are insufficient. Nothing in the filed AR evidences or explains the rationale for BLM's decision to increase the number of livestock permittee animal unit months ("AUMs") originally in the 2005 EA for the WDHA Amendment to the White River RMP ("2005 EA") from the livestock AUMs proposed in the 2004 EA for the same West Douglas herd management alternatives. AR, Vol. 1 at 66-67; AR, Vol. 2 at 322. One of the key issues before this Court concerns whether BLM can lawfully eliminate an entire herd from an area used historically by wild horses at the passage of the Wild Free-Roaming Horses and Burros Act ("WFHBA") in 1971. Under the WFHBA, the only time wild horses can be removed is when they are deemed to be "excess," i.e. when the population of wild horses exceeds the capacity of the habitat, and must be removed from the herd area "so as to restore a thriving natural ecological balance to the range, and protect the range from the deterioration associated with overpopulation." 16 U.S.C. § 1333(b) (2008). The issue of whether there is a "thriving natural ecological balance" necessarily involves the allocation of forage among the various species found on the public lands. Therefore, documents concerning BLM's allocation of forage between wild horses and livestock in the WDHA bears directly on BLM's duties under the WFHBA.

Defendants have asserted the deliberative process privilege in withholding at least three (and possibly more) documents that address changes between the 2004 EA and the 2005 EA.  See Declaration of Sarah Wisely ("Wisely Decl."), DP14, DP16, and DP18.  Those documents, or portions thereof, that put forth what became BLM's final decision regarding changes to the livestock AUMs in the WDHA, and the factual basis for those changes are not subject to the deliberative process privilege and should be produced.  See Eugene Burger Mgmt. Corp. v. HUD, 192 F.R.D. 1, 5 (D.D.C. 1999) ("Whatever its genesis, the document may lose its status because it memorializes or evidences the policy the agency ultimately adopts on an issue or because the agency used the document in its dealings with the public," citing Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Other Documents Not Subject to the Deliberative Process Privilege

In addition to the documents concerning livestock forage allocation and AUMs, Defendants have improperly withheld other documents that are not subject to the deliberative process privilege.  The AR is devoid of any documents addressing BLM's decision to include in the 2005 EA only two of the eight alternatives for managing wild horses in the WDHA originally considered in the 2004 EA.  Although internal staff discussions on the EAs may be part of the decision making process, documents that concern the decision as it was ultimately rendered are not subject to the deliberative process privilege.  192 F.R.D. at 5.  Therefore, Defendants should be compelled to produce any and all documents that memorialize that decision and/or provide the rationale for the deletion of the other six alternatives for the management of wild horses in the WDHA to supplement the AR.  For the same reason, the document described at

DP29 is not subject to the privilege and should be produced because it "*summarizes decisions* made during a conference call to discuss options for management of the West Douglas herd while the protests were under review." Wisely Decl., DP29 (emphasis added). As explained above, documents used in dealings with the public are not afforded protection under the deliberative process privilege.

Defendants should also produce, in whole or in part, the document described at DP36, which purports to summarize the views expressed by the Colorado State Director on addressing protests to the 2005 EA. Wisely Decl., DP36; see Coastal States Gas Corp., 617 F.2d at 868 ("The identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made.").

The AR in its current form is inadequate to explain a rationale connection between facts found and choices made by BLM regarding management of the West Douglas Herd. BG&E v. NRDC, 462 U.S. 87, 105 (1983). Without a complete record before it that provides a showing of how the BLM reached its decision to eradicate the West Douglas herd, this Court cannot determine whether Defendants' actions were arbitrary and capricious.

Plaintiffs, therefore, respectfully request that Defendants be ordered to produce the documents as described above and that all additional documents produced by Defendants be formally made part of the Record before this Court.

Dated this 6th day of June, 2008.

        Respectfully submitted,

        /s/ Valerie J. Stanley
        Valerie J. Stanley
        D.C. Bar No. 384882
        329 Prince George Street
        Laurel, MD 20707
        (301) 549-3126
        (301) 549-3228 fax

        /s/ Mara C. Hurwitt
        Mara C. Hurwitt
        D.C. Bar No. 482409
        Dewey & LeBoeuf LLP
        1101 New York Ave. N.W.
        Suite 1100
        Washington, D.C. 20005-4213
        (202) 346-8094
        (202) 956-3280 fax

        Counsel for Plaintiffs