RONALD J. TENPAS,
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

CHARLES FINDLAY, Assistant Chief
JACOB HASEMAN, Trial Attorney
Natural Resources Section
601 D Street, N.W.
Washington, D.C. 20004
Telephone: (202) 305-0240
Jacob.Haseman@usdoj.gov

JEAN E. WILLIAMS, Chief
Wildlife and Marine Resources Section
KRISTEN BYRNES FLOOM
Trial Attorney (DC Bar No. 469615)
Wildlife and Marine Resources Section
601 D Street, N.W.
Washington, D.C. 20004
Telephone: (202) 305-0340
Facsimile: (202) 305-0275
Kristen.Floom@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO WILD HORSE AND BURRO COALITION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE, et al.,<br><br>Defendants. | Civ. No. 06-1609 RMC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS** |

Defendants hereby respond to Plaintiffs' Statement of Undisputed Material Facts, Dkt.

No. 68-3, as follows:

1. Plaintiffs cite a website, which is not part of the administrative record. Defendants dispute this statement, and aver that the most recent estimate, as of June 17, 2008, is that there are 33,000 wild horses and burros (approximately 29,500 horses and 3,500 burros) on ranges managed by the Bureau of Land Management ("BLM"), and only 30,000 in holding. See Fact Sheet on Wild Horse and Burro Program (available at http://www.blm.gov/wo/st/en/prog/wild_horse_and_burro/Fact_Sheet.html.

2. Defendants agree with the statement in Paragraph 2.

3. Defendants agree with the statement in Paragraph 3, and aver that BLM has removed all horses from certain herd areas in Colorado and other western states for various reasons.

4. Defendants dispute the statement in the first sentence of Paragraph 4, and aver that BLM practices vary from state to state. Defendants further aver that, in Colorado, BLM generally introduces new animals approximately every four to eight years into herds with populations of fewer than 60 wild horses. With respect to the second sentence in Paragraph 4, Defendants dispute that "populations of this level are at risk for survival." Defendants aver that such populations have thrived, but BLM is concerned about long-term viability from a genetic standpoint. See A.R. Vol. 1, Tab 22, page 120 ("It is generally accepted that in order to have a genetically viable herd, the population should number at least 150 animals. With an AML [in the Piceance-East Douglas HMA] of 135-235 horses, we're at or above that number in most years.").

5. Defendants agree with the statements in Paragraph 5.

6. Defendants agree with the statements in Paragraph 6.

7. Defendants agree with the statements in Paragraph 7.

8. Defendants agree with the statements in Paragraph 8.

9. Defendants dispute that BLM has not engaged in seasonal use studies since the passage of the Wild Free-Roaming Horses and Burros Act ("WFHBA"). Defendants aver that information on seasonal use patterns is contained in the 1975 Management Framework Plan. See A.R. Vol. 4, Tab 12, and the 1997 Resource Management Plan. A.R. Vol. 4, Tab 5. Defendants further aver that BLM is constantly collecting new data regarding seasonal use patterns. Defendants agree with the remaining statements in Paragraph 9.

10. Defendants agree with the statements in Paragraph 10, but aver that, since the 1975 analysis, BLM has required the permittee to make allowances for wild horse forage in the Twin Buttes allotment. See Suppl. A.R. Doc. 65-8 at 42-43 (requiring forage for a herd of zero to 50 horses in the short term (zero to 10 years)).

11. Defendants agree with the statement in Paragraph 11, but note that the correct citation is A.R. Vol. 4, Tab 14, page 383.

12. Defendants agree that the statement in Paragraph 12 was accurate in February 1975 but aver that, since that time, BLM has gathered information on home ranges and range boundaries through environmental analyses and land use plans.

13. Defendants agree with the statements in Paragraph 13. Defendants aver that the locations of wild horses as reported by the public were included in the boundaries of the Douglas Creek herd unit. See Suppl. A.R. Doc. 65-4; A.R. Vol. 1, Tab 73, page 491.

14. Defendants agree with the statements in the body of Paragraph 14. With respect to footnote 3, Defendants aver that the maps described by Plaintiffs are available for viewing at the BLM White River Field Office.

15. Defendants agree with the statements in Paragraph 15.

16. Defendants agree with the statement in Paragraph 16.

17. Defendants agree with the statements in Paragraph 17.

18. Defendants agree with the statement in Paragraph 18.

19. Defendants agree with the statement in Paragraph 19.

20. Defendants agree with the statements in Paragraph 20.

21. Defendants agree with the statements in Paragraph 21.  Defendants aver that the numbers of animal unit months ("AUMs") of forage were revised in the 1997 Resource Management Plan.  See 1997 Resource Management Plan at 4-23, available at http://www.blm.gov/co/st/en/BLM_Programs/land_use_planning/rmp/white_river.html (allocating 146,059 AUMs to livestock grazing).

22. Defendants agree with the statement in Paragraph 22.

23. Defendants agree with the statement in Paragraph 23.  Defendants aver that no removals were conducted in the White River Resource Area between passage of the WFRHBA in 1971 and the first census in 1974.

24. Defendants agree with the statements in Paragraph 24.

25. Defendants agree with the statements in Paragraph 25.  Defendants aver that, of the 45 wild horses counted in the Douglas Creek herd unit, 36 were located east of the highway on land that is presently included in the Piceance-East Douglas Herd Management Area.  See A.R. Vol. 1, Tab 73, page 491.

26. Defendants agree with the statements in Paragraph 26.

27. Defendants agree with the statement in Paragraph 27, but note that the correct citation is A.R. Vol. 4, Tab 14, page 383.

28. Defendants agree with the statements in Paragraph 28.

29. Defendants agree with the statements in Paragraph 29.

30. Defendants agree with the statements in Paragraph 30.

31. Defendants agree with the statements in Paragraph 31.

32. Defendants agree with the statement in Paragraph 32.

33. Defendants agree with the statement in Paragraph 33.

34. Defendants agree with the statement in Paragraph 34.  Defendants aver that the 2004 Amendment was protested by 19 parties.  See A.R. Vol. 2, Tabs 9-27.

35. Defendants agree with the statements in Paragraph 35.

36. Defendants agree with the statements in Paragraph 36.

37. Defendants agree with the statement in Paragraph 37.

38. Defendants agree with the statement in Paragraph 38.

39. Defendants agree with the statement in Paragraph 39.

40. Defendants agree with the statements in Paragraph 40.

41. Defendants agree with the statements in Paragraph 41.

42. Defendants agree with the statement in Paragraph 42.

43. Defendants agree with the statements in Paragraph 43.

44. Defendants agree with the statement in Paragraph 44.

45. Defendants agree with the statement in Paragraph 45.

46. Defendants agree with the statements in Paragraph 46.

47. Defendants agree with the statement in Paragraph 47.

48. Defendants agree with the statement in Paragraph 48.

49. Defendants agree with the statements in Paragraph 49.

50. Defendants agree with the statement in Paragraph 50.

51. Defendants agree with the statements in Paragraph 51.

52. Defendants agree with the statement in Paragraph 52.

53. Defendants agree with the statement in Paragraph 53.

54. Defendants agree with the statement in Paragraph 54.

55. Defendants agree with the statement in Paragraph 55.

56. Defendants agree with the statements in Paragraph 56.

57. Defendants agree with the statement in Paragraph 57.

58. Defendants dispute with the statement in Paragraph 58, which is contained in an anonymous comment to a draft document. See A.R. Vol. 1, Tab 77, page 574. Defendants aver that a 2005 census of the West Douglas herd reflected that "26.5% of the horses observed were yearlings (young yearlings approximately 10 months of age). . . . The 20 - 26% range of foals captured during gather activities and the 26.5% yearling ratio observed during the 2005 census indicates a productive population." A.R. Vol. 1, Tab 73, page 503.

59. Defendants agree with the statement in Paragraph 59. See A.R. Vol. 1, Tab 73, page 500.

60. Defendants agree with the statements in Paragraph 60.

61. Defendants agree with the statement in Paragraph 61.

Respectfully submitted this 16th day of July, 2008.

                                          RONALD J. TENPAS,
                                          Assistant Attorney General
                                          U.S. Department of Justice
                                          Environment & Natural Resources Division

                                          CHARLES FINDLAY, Assistant Chief
                                          JACOB T. HASEMAN, Trial Attorney
                                          Natural Resources Section

601 D Street, N.W.
Washington, D.C.  20004
Telephone: (202) 305-0240
Jacob.Haseman@usdoj.gov

JEAN E. WILLIAMS, Chief
Wildlife and Marine Resources Section
/s/ *Kristen Byrnes Floom*
KRISTEN BYRNES FLOOM
Trial Attorney (DC Bar No. 469615)
Wildlife and Marine Resources Section
601 D Street, N.W.
Washington, D.C.  20004
Telephone: (202) 305-0340
Facsimile: (202) 305-0275
Kristen.Floom@usdoj.gov

*Attorneys for Defendants*

OF COUNSEL:

Andrea Gelfuso
Office of the Solicitor
Rocky Mountain Region
U.S. Department of the Interior
755 Parfet Street, Suite 151
Lakewood, CO 80215