```
 1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MONTANA
 2                        MISSOULA DIVISION

 3  ─────────────────────────────────────────────────────

    THE CLOUD FOUNDATION, INC.,
 4  A Colorado non-profit organization,    CASE NO.
    and FRONT RANGE EQINE RESUCE, INC.,    CV 06-109-M-DWM
 5  a Colorado non-profit organization,

 6                    Plaintiffs,
            vs.
 7
    DIRK KEMPTHORN, in his official         Missoula, Montana
 8  Capacity as Secretary, United           Tuesday 08.01.2006
    States Department of Interior,          9:07 a.m.
 9  KATHLEEN CLARKE, in her official
    capacity as Director, Bureau of
10  Land Management, SANDRA S. BROOKS,
    in her official capacity as Field
11  Manager, BLM, Billings Field
    Office, LINDA COATES-MARKLE, in
12  her official capacties as Research
    Coordinator, Wild Horse and Burro
13  Program, Bureau of Land Management
    and Montana State Wild Horse and
14  Burro Specialist, Bureau of Land
    Management, MIKE JOHANNS, in his
15  official capacity as Secretary,
    United States Department of
16  Agriculture, DALE BOSWORTH, in his
    official capacity as Chief, United
17  States Forest Service, GAIL KIMBELL,
    in her official capacity as Forester,
18  Region 1, United States Forest Service,

19                    DefendantS.

20  ─────────────────────────────────────────────────────

              TESTIMONY OF LINDA COATES-MARKLE
21                TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DONALD W. MOLLOY,
22              UNITED STATES DISTRICT JUDGE.

23

24      Proceedings recorded by mechanical stenography and
        transcript produced by computer by Daina B. Hodges,
25      United States District Court Official Court Reporter
                  Missoula/Helena/Butte Divisions
```

**EXHIBIT 3**

```
 1                          APPEARANCES
 2

 3
    PATRICK G. FRANK, ESQ., of Worden Thane, 111 N. Higgins, Suite
 4  600, Missoula, Montana   59802, and VALERIE STANLEY, ESQ.,
    329 Prince George Street, Laurel, Maryland   20707,.
 5       Appearing on behalf of the Plaintiff.

 6

 7  VICTORIA L. FRANCIS, ESQ., Assistant United States Attorney
    for the Office of the United States Attorney, District of
 8  Montana, Billings Office, 2929 3rd Avenue North, Suite 400,
    Billings, Montana   59101,
 9       Appearing on behalf of the Plaintiff.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1  you biopsied any of those mares?
2  A.    No, we have not.
3  Q.    Why is that?
4  A.    Because we've not had the opportunity to do so.
5  Q.    What prevents you from doing this?
6  A.    In order to biopsy a granuloma or a lump or a nodule,
7  one would have to euthanize the animal to do that. And that's
8  not considered appropriate under our management.
9  Q.    So, in other words, you will not know the effects of
10 those tumors until after the animal is dead; is that correct?
11 A.    As far as the structure of the specific nodule, that's
12 correct.
13 Q.    Okay. Is it possible that a granuloma on the outside of
14 the skin, that there could be internal granulomas?
15 A.    It is possible.
16 Q.    I wanted to talk about the range first. I wanted to ask
17 you a question about the range for a second.
18        The Pryor Mountain Wild Horse Range consists of how
19 many acres?
20 A.    39,651.
21 Q.    Okay. Does that 39,651 acres represent the full area
22 that these wild horses use?
23 A.    It represents the designated range.
24 Q.    Does it represent the full area that these horses have
25 historically or currently used?

1  A.  The horses currently are using unauthorized land in the
2  northern upper elevations on Forest Service land.
3  Q.  So when you consider the effects of the -- effects on
4  the range, you're only looking at the designated range.
5  A.  That's correct.
6  Q.  Okay. What other animals are out there besides wild
7  horse that impact the range, in terms of grazing?
8  A.  Studies done from back in the mid-1990s indicates that
9  there is, at times, impacts from bighorn sheep as well as mule
10 deer that need to be considered with the wild horses on that
11 range.
12 Q.  Has your agency called for removal of mule deer or the
13 other animals that are impacting the range?
14 A.  No, we have not.
15 Q.  Isn't it true that you don't know from looking at the
16 range whether it's wild horses or mule deer or bighorn sheep or
17 cows, that you don't know who the animals are that are eating
18 the plants?
19 A.  It is true that it's a combination of all impacts that
20 creates the range condition that we see at this time.
21 Q.  So, in other words, it's a combination of all the
22 animals, it's not just the wild horses, is it?
23 A.  No, it is a combination of all of the impacts.
24 Q.  It's not just the wild horses, is it?
25 A.  That's correct, it's a combination of all the impacts.