UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO WILD HORSE ) | |
| AND BURRO COALITION, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-1609 (RMC) |
| ) | |
| DIRK KEMPTHORNE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiffs in this suit challenge the decision of the Bureau of Land Management ("BLM"), an agency of the U.S. Department of the Interior ("DOI"), to remove all wild horses from the West Douglas Herd Area located southwest of Rangely, Colorado. BLM[1] has filed the Administrative Record ("AR") and Plaintiffs move to compel the addition of other documents as well as the release of certain documents for which the BLM claims the deliberative process privilege.

**I. BACKGROUND**

As initially filed, the AR contained approximately 216 documents which date from the early 1970s through 2007, constituting more than 1500 pages. *See* Admin. R. [Dkt. # 60], Ex. 3, Decl. of Sarah E. Wisely ("Wisely Decl.") ¶ 4. In response to Plaintiffs' challenge to the adequacy of the AR, BLM agreed to file additional documents, although it did not concede that they were a

---

[1] Plaintiffs name as defendants Dirk Kempthorne, in his official capacity as Secretary of the DOI, Kent E. Walter, in his official capacity as Field Manager of BLM, James L. Caswell, in his official capacity as Director of BLM, and Sarah E. Wisely, in her official capacity as BLM Colorado State Director. Because the Defendants are being sued in their respective official capacities as administrators of BLM or its parent department, DOI, and BLM is the agency whose actions and decisions are at issue in this suit, the Court will refer to the Defendants, collectively, as BLM.

necessary part of the record. *See* Fed. Defs.' Opp'n to Pls.' Mot. to Supp. Admin. R. ("Defs.' Opp'n") at 2. BLM withheld 39 documents as subject to the deliberative process privilege. *Id.* at 9. Ms. Wisely has filed a declaration that states that "[a]ll of these documents are pre-decisional and contain opinions and/or recommendations regarding policy matters." *See* Wisely Decl. ¶ 6.[2]

    Plaintiffs continue to object to the absence of:

1. Public comments submitted to BLM concerning the roundups and removal of wild horses in 1998, 2000, and 2001. Pls.' Reply in Supp. of Mot. to Supp. Admin. R. ("Pls.' Reply") at 2. BLM says to produce these records "would be unnecessarily burdensome." Defs.' Opp'n at 7.

2. Documentation to evidence or explain the rationale for BLM's decision to increase the number of livestock permittee animal unit months ("AUMs") originally in the 2005 Environmental Assessment ("EA") from the livestock AUMs proposed in the 2004 EA for the same West Douglas herd management alternatives. Pls.' Reply at 3. Plaintiffs argue that the deliberative process privilege cannot protect documents, or portions thereof, that contain what became BLM's final decision, as well as the factual basis for the changes. *Id.* at 4. Specifically, they address documents listed on the Deliberative Process Privilege Log as DP14, DP16 and DP18. *See* Wisely Decl. ¶¶ DP 14, DP16 & DP18.

3. Documents addressing BLM's decision to include in the 2005 EA

---

[2] Ms. Wisely states that almost all of the withheld deliberative documents are internal e-mail messages. Wisely Decl. ¶ 8. She adds:

> Relying entirely on verbal advice would lead to a lack of coordination and potential confusion [among staff and managers located in many separate geographic locations], impairing BLM's ability to carefully and thoroughly develop positions on important policy matters. I have personally reviewed these documents and I believe that this material, if disclosed, would significantly and adversely impair the integrity and quality of the decision making process for future BLM resource decisions.

*Id.*

    only two of the eight alternatives for managing wild horses in the West Douglas Herd Area that it originally considered in the 2004 EA. Pls.' Reply at 4.

4. Document No. 29 on the Deliberative Process Privilege Log because it "summarizes decisions made during a conference call," Wisely Decl. ¶ DP 29, and which Plaintiffs describe as a "document[] used in dealings with the public." Pls.' Reply at 5.

5. Document No. 36 on the Deliberative Process Privilege Log because it "purports to summarize the views expressed by the Colorado State Director on addressing protests to the 2005 EA," *id.* (citing Wisely Decl. ¶ DP36), and thus is "'more likely to contain instructions to staff explaining the reasons for a decision already made,'" *id.* (quoting *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

## II. APPLICABLE LAW

Plaintiffs file their claims in this action under the Administrative Procedure Act ("APA") which grants district courts jurisdiction to review whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2008). In applying this standard of review, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made."). "Although an agency may not unilaterally determine what constitutes the administrative record, the agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary." *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 55 (D.D.C. 2003) (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (D.C. Cir. 1993)). Therefore,

"supplementation of the administrative record is the exception, not the rule." *Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (citing *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1105 (D.C. Cir. 1979)); *Funds for Animals*, 245 F. Supp. 2d at 197) ("Courts grant motions to supplement the administrative record only in exceptional cases.").

Although "review [of an agency action] is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), courts are reluctant to force agencies to expose their decisionmaking processes, *see NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 151-52 (1975). Courts will therefore permit agencies to invoke the deliberative process privilege in order to protect information that exposes their decisionmaking processes, and thus ultimately, to "prevent injury to the quality of agency decisions." *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

To withhold a document under the deliberative process privilege, an agency must demonstrate that the document at issue is both pre-decisional and deliberative. *Animal Legal Defense Fund v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made. Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Petroleum Info. Corp.*, 976 F.2d at 1434 (citation omitted); *see also Coastal States*, 617 F.2d at 866. However, "[w]hatever its genesis, [a] document may lose its status because it memorializes or evidences the policy the agency ultimately adopts on an issue or because the agency used the document in its dealings with the public." *Eugene Burger*

*Mgmt. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 192 F.R.D. 1, 5 (D.D.C. 1999) (citing *Coastal States*, 617 F.2d at 866).

### III.  ANALYSIS

Plaintiffs assert that five categories of documents are not protected from disclosure by the deliberative process privilege.

First, Plaintiffs demand inclusion in the AR of the public comments to the 1998, 2000, 2001, and 2006 EAs on gathers[3] conducted in the West Douglas Herd Area in those years. Pls.' Reply at 1.  They contend that "the overwhelming majority of those comments were opposed to the roundups and eventual elimination of the herd" and that BLM "cannot legitimately claim any real burden in producing the relatively small sets of public comments that urged BLM not to eliminate the West Douglas wild horses." *Id.* at 2.  BLM says that the public comments on the four EAs are "voluminous." Defs.' Opp'n at 7.  The particular gathers at issue were protested by certain public commentators but completed by BLM nonetheless.  Pls.' Reply at 2.  The previous protests are now moot and need not be made part of this AR.

Second, Plaintiffs seek the documents described in DP14, DP16 and DP18 of the Deliberative Process Privilege Log which explain the rationale for BLM's decision to increase the number of livestock permittee AUMs in the 2005 EA from the number proposed in the 2004 EA. Pls.' Reply at 3.  Whether those documents described in DP14, DP16 and DP18 of the Deliberative Process Privilege Log should be produced is answered by their context.  According to Ms. Wisely, Colorado State Office ("CSO") staff member Tamara Sadoo prepared a September 29, 2004

---

[3] The term "gather" refers to BLM's roundup or proposed roundup of wild horses in herd areas.  *See* Am. Compl. at 18 [Dkt. # 24].

memorandum that was "a frank critique of the 2004 EA" and which "pose[d] a series of questions regarding issues that Sadoo believed required further analysis and clarification prior to the agency issuing a final decision on the West Douglas horses."  Wisely Decl. ¶ DP13.  The documents Plaintiffs seek are each responsive memos, circulated to the same group of staff and managers, that commented on Ms. Sadoo's critique and pre-dated any change from the 2004 EA.  *See id.* ¶ DP13.  There is no indication from Ms. Wisely's description, which is accorded a presumption of good faith, *see SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), that these responses contained BLM's final decision or are not pre-decisional.  Hence, these documents are protected under the deliberative process privilege.

Third, Plaintiffs argue that because "documents that concern [a] decision as it was ultimately rendered are not subject to the deliberative privilege," Pls.' Reply at 4 (citing *Eugene Burger Mgmt. Corp.*, 192 F.R.D. at 5), BLM should be "compelled to produce any and all documents that memorialize [the] decision and/or provide the rationale for" the decision to include in the 2005 EA only two of the eight alternatives for managing wild horses in the West Douglas Herd Area that were originally considered in the 2004 EA.  *Id.*  It is true that "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public," *Coastal States Gas Corp.*, 617 F.2d at 866, but according to the Deliberative Process Privilege Log, none of the documents withheld states BLM's final position, formally or informally, on the issue of managing the wild horses in the West Douglas Herd Area in 2005; rather, the memoranda and e-mails listed on the Deliberative Process Privilege Log concerning that issue contain only the opinions and recommendations of individual staff members and low level managers prior to BLM's final decision.

*See* Wisely Decl. ¶ 5-7. Furthermore, BLM's final decision was memorialized in the 2005 EA; it was this document, not the various memoranda and internal e-mails, that had "decisional significance, and [] guide[d] and direct[ed] future conduct of subordinates." *Coastal States Gas Corp.* at 867. The memoranda and e-mails listed in the Deliberative Process Privilege Log relating to the alternatives for managing wild horses in the West Douglas Herd Area were therefore properly withheld.

Fourth, the document listed as DP29 in the Deliberative Process Privilege Log is described by Ms. Wisely as an:

> [e]mail between Don Glenn, [the Wild Horses and Burros National Program Office ("WHB NPO")], and Fran Ackley, WHB CSO, dated April 12, 2006. In this exchange, Ackley summarizes decisions made during a conference call held to discuss options for management of the West Douglas herd while the protests were under review, and requests Glenn's guidance regarding a legal and policy issued raised by the discussion. The exchange includes Glenn's response. The document is pre-decisional and contains opinions on a policy decision that was subject to debate. Release of this document would discourage the open exchange of ideas and adversely impair the quality of the decision-making process.

Wisely Decl. ¶ DP30. Plaintiffs assert that this was a "document[] used in dealings with the public," Pls.' Reply at 5, but nothing in the Deliberative Process Privilege Log suggests such a conclusion. Rather, the document "summarizes decisions . . . for management of the West Douglas herd [temporarily] while the protests were under review," and a discussion of a legal and policy issue. Wisely Decl. ¶ DP30. The temporary management of the herd is not relevant to Plaintiffs' challenge here and e-mail exchanges between staff and managers discussing legal and policy issues, before their resolution, constitute documents protected by the deliberative process privilege.

Fifth, Plaintiffs demand that BLM produce the document described in DP36 of the

Deliberative Process Privilege Log because it "purports to summarize the views expressed by the Colorado State director on addressing protests to the 2005 EA." Pls.' Reply at 5. Plaintiffs rely on *Coastal States Gas Corp.* which advises that "[t]he identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." 617 F.2d at 868. Plaintiffs mis-apply *Coastal States*. The document at issue is an e-mail dated October 18, 2006, sent by Glenn Wallace of CSO to Washington Office staff, describing a briefing of Ms. Wisely in which Mr. Wallace "provide[d] a candid assessment of the State Director's legal and policy concerns as the agency addressed protests to the 2005 EA." Wisely Decl. ¶ DP36. Mr. Wallace neither gave directions to his staff nor reported on decisions made by the Colorado State Director, either of which might be subject to production. The recitation of a superior official's "legal and policy concerns" relating to public protests of proposed agency action was clearly pre-decisional and therefore subject to the deliberative process privilege.

## IV.  CONCLUSION

Defendants having ameliorated Plaintiffs' original protests about the incompleteness of the AR, and Plaintiffs' additional protests being without merit, Plaintiffs' Motion to Supplement

the Administrative Record and to Require Defendants to Include in the Administrative Record Certain Information Noted as Withheld in the Defendants' Privilege Log [Dkt. # 63] will be denied. A memorializing order accompanies this Memorandum Opinion.

DATE: August 4, 2008

/s/
ROSEMARY M. COLLYER
United States District Judge