UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

COLORADO WILD HORSE )
AND BURRO COALITION, INC. )
et al., )
       )
      **Plaintiffs**, )
       )
v. ) Civil Action No. 06-1609 (RMC)
       )
DIRK KEMPTHORNE, )
et al., )
       )
      **Defendants**. )
_____)

**PLAINTIFFS' SURREPLY IN RESPONSE TO DEFENDANTS'
REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT**

    Plaintiffs respectfully submit this surreply to respond to certain misstatements of fact and law in Defendants' Reply in Support of Defendants' Cross-Motion for Summary Judgment.

    Defendants incorrectly assert that Plaintiffs object to the filing of the final 2008 West Douglas Herd Area ("WDHA") Gather Plan Environmental Assessment ("Gather Plan EA") after Plaintiffs filed their motion for summary judgment. Defendants' Reply in Support of Cross-Motion for Summary Judgment ("Def. Rep.") at 2-3. Plaintiffs do not object to the timing of the filing of the 2008 WDHA Gather Plan EA with the Court, which, as Defendants correctly note, was agreed to as part of the Joint Briefing Schedule. Rather, Plaintiffs dispute Defendants' contention that Plaintiffs may only seek review of the Bureau of Land Management's ("BLM") decision to zero out the West Douglas herd by challenging BLM's Gather Plan EA, and that Plaintiffs were required to present their

1

challenge to the Gather Plan EA at the time they filed their opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Support of their Motion for Summary Judgment. This contention is completely unsupportable in light of the fact that Defendants have conceded that the Gather Plan EA is limited to "the actual method to be used to remove horses from the West Douglas Herd Area." Defendants' Combined Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment ("Def. Br.") at 9-10; Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Opp.") at 1-2. As previously noted in Plaintiffs' opposition brief, Defendants' express position is that "the decision to remove the [West Douglas] horses . . . is beyond the scope of this environmental assessment." Pl. Opp. at 1-2 (citing Supplemental Administrative Record ("AR"), Doc 7-18. It is thus patently absurd for Defendants to argue in their reply brief that Plaintiffs' challenge to the decision to eradicate the West Douglas herd must be limited to a challenge to an Environmental Assessment ("EA") that Defendants profess does not concern the actual decision to remove the horses.

Defendants' argument is also conceptually flawed because of the distinction between the nature of BLM's substantive decision in the 2005 West Douglas Amendment to the White River Resource Management Plan ("2005 Amendment to the White River RMP") and its procedural analysis of the environmental *effects* of such a decision, as it does in an EA. It bears emphasizing that in its EA and Decision Record ("DR") on the EA, BLM is only considering the procedural effects of the substantive decision it has already made in the 2005 Amendment to the White River RMP. That substantive

2

decision—to remove wild horses from the West Douglas Herd Area—was made in September 2005. When BLM resolved Plaintiffs' protest of that decision, it explained that, "This completes my review and is the final agency action for the Department of the Interior on the issues and concerns raised." AR Vol. 1, Tab 12, p. 80; see also 43 C.F.R. § 1610.5-2(b). In fact, BLM has repeatedly recognized the distinction between the substantive decision—to remove wild horses from the range—from the procedural analysis it purportedly undertakes when considering the environmental effects of that decision through the EA and DR. BLM has consistently advised plaintiffs in this case and other members of the public that substantive challenges to the agency's determination to remove wild horses from various areas of the public lands are *beyond the scope* of any Environmental Assessment. BLM's transparent attempt to shield its *substantive* decision to remove every wild horse from a herd area of the public lands from any type of judicial review by contending that Plaintiffs may only challenge the procedural, or process, aspects of the roundup and BLM's analysis of the environmental effects of its action should be rejected by this Court.

Defendants' fixation on the 2008 WDHA Gather Plan EA as the action to be challenged attempts to obfuscate the issues before this Court. The crux of this suit is Plaintiffs' challenge to Defendants' unlawful decision to zero out the West Douglas wild horse herd. Thus, Plaintiffs have properly challenged the October 10, 2007 DR on the 2005 Amendment to the White River RMP, which "marks the consummation" of the decision-making process by the Department of the Interior to remove all remaining West Douglas horses. Pl. Opp. (citing Domestic Secs., Inc. v. SEC, 333 F.3d 239, 246 (D.C. Cir. 2003) (internal citation omitted)). The final decision to eradicate the West Douglas

3

herd thus having been made, the Gather Plan EA—in conjunction with BLM's contracting for a round-up of the horses during the period October 1-7, 2008—merely establishes a timeframe and the methods by which the removal of the remaining members of the herd will be accomplished. Plaintiffs have, therefore, properly limited their arguments concerning the Gather Plan EA to its relationship to the DR on the 2005 Amendment to the White River RMP, because the methods with which the Gather Plan EA is concerned are not, in and of themselves, directly relevant to the issues before this Court on the parties' cross-motions for summary judgment.

In maintaining that, on the one hand, the DR on the 2005 Amendment to the White River RMP is not the final agency decision to eliminate the West Douglas herd and not subject to judicial review under the Administrative Procedure Act, and, on the other hand, the Gather Plan EA does not concern the decision to eliminate the herd, Defendants create a bizarre alternate reality in which BLM will remove all remaining West Douglas horses without there ever having been a final agency decision to remove them.

Finally, Plaintiffs dispute Defendants' improper characterization of Plaintiffs' offer to submit a supplemental brief on any matters addressed in the 2008 WDHA Gather Plan EA as a waiver of the right to raise any claims or complaint as to the Gather Plan EA. Def. Rep. at 2-4. Plaintiffs wish to make clear that they reserve the right to challenge the Gather Plan EA directly in a motion for a temporary restraining order to prevent BLM from gathering and removing wild horses from the WDHA or gathering and removing any West Douglas horses from adjacent public lands. Plaintiffs may need to do so precisely because the timeframe in which Defendants' planned removal of the

4

horses conflicts with the Court's schedule, as was discussed at the April 23, 2008 status conference.

At that status conference, the Court advised Counsel that it would very possibly be unable to issue a decision on the parties' cross-motions for summary judgment by the end of September and requested that Counsel for Defendants discuss with their clients the possibility of postponing the 2008 West Douglas herd gather, which had previously been scheduled for September 1, 2008, in order to give the Court sufficient time to rule on the cross-motions.  See Ex. 1, Transcript of April 23, 2008 Status Conference ("Conf. Trans."), at 6-9, attached hereto.  The Court further advised Counsel that, if Defendants were unable to delay the gather for a sufficient period of time, the alternative would be for the Court to enjoin the BLM from conducting the gather.  See Conf. Trans. 9:2-6. ("And then what [the Court] would have to do, in order to buy some time, because once the horses are gone they're gone would be to somehow enjoin BLM from even doing it.").  Nonetheless, while acknowledging that gathers can be conducted in the WDHA until mid-November, Defendants rescheduled the West Douglas gather for October 1-7, 2008.  See Third Declaration of Kent Walter, Court Doc. 62-2.[1]  Plaintiffs are aware that this postponement may be inadequate to accommodate the Court's schedule and therefore, reserve their right to seek injunctive relief against any removal of the West Douglas horses if the issue concerning the legality of that removal has not been resolved.

---

[1] Defendants selected those dates because their contractor is scheduled to round up wild horses in Wyoming during the remainder of October.  Id.

5

Dated this 26th day of August, 2008.

                                      Respectfully submitted,

/s/ Valerie J. Stanley
Valerie J. Stanley
D.C. Bar No. 384882
329 Prince George Street
Laurel, MD 20707
(301) 549-3126
(301) 549-3228 fax

/s/ Mara C. Hurwitt
Mara C. Hurwitt
D.C. Bar No. 482409
Dewey & LeBoeuf LLP
1101 New York Ave. N.W.
Suite 1100
Washington, D.C. 20005-4213
(202) 346-8094
(202) 956-3280 fax

Counsel for Plaintiffs